## WARD ET AL. v. YARNELLE ET AL.

### [No. 21,324. Filed February 25, 1910.]

1. APPEAL.— *Term-Time.— Parties.— Notice.*— An appellant in a term-time appeal is not required to notify or to make parties on appeal, his coparties to the decree appealed from. p. 541.
2. APPEAL.—*Parties.—Notice.—Joinder in Error.*—Where parties join another in an appeal and assign errors along with him, it is not necessary for him to name them as appellees, all other parties to the decree being named as appellees. p. 542.
3. APPEAL.—*Vacation.—Notice.— Parties.*—Where parties take a vacation appeal from a decree and they give notice to all parties to the decree who refuse to join in the appeal, naming those refusing to join as appellees, the appeal is properly taken. p. 542.
4. APPEAL.—*Title.—Assignments of Errors.*—Under one title to the assignment of errors, on appeal, all parties may separately assign errors. p. 542.
5. APPEAL.— *Parties.— Trustees.— Beneficiaries.*— A trustee for bondholders cannot raise the question of defect of parties for the first time on appeal, its duty being to disclose at the proper time in the trial court the names of the interested bondholders. p. 542.

6. PARTIES.— *Trustees.— Foreign Corporations.*— A savings bank, which is the trustee for bondholders, that files a cross-complaint for the protection and enforcement of its rights as such trustee against certain property in litigation, is bound by the decree adjudicating its rights, though it is a foreign corporation, and acts only in a representative capacity. p. 543.

7. TRIAL.—*Issues.— Trustees.— Mortgages.—Mechanics' Liens.*—In a suit by the holder of a mechanic's lien against all persons interested in the property in litigation, a foreign corporation which is a trustee for bondholders under a mortgage executed upon such property, can assert its rights under a cross-complaint, a special answer, or a general denial. p. 543.

8. LIENS.—*Equitable.—Statutory.*—No equitable lien exists where there is no statutory lien. p. 545.

9. LIENS.— *Equitable.— Conditional Sales.— Mortgages.*— Where vendors sell goods to the owners of a theater building covered by a mortgage and mechanics' liens, such vendors retaining title until payment is made, they cannot secure an equitable lien upon the building for the value of the goods, on the ground that a removal thereof would seriously impair the value of the building. pp. 545, 552.

10. MECHANICS' LIENS.—*Equity.*—Suits for the foreclosure of mechanics' liens are of an equitable character, and are of the nature of proceedings *in rem.* p. 545.

11. STATUTES.— *Mechanics' Liens.—Prior Incumbrances.*— Section four of the mechanics' lien act of 1883 (Acts 1883, p. 140. §8298 Burns 1908) providing that mechanics and materialmen "shall have priority over all liens suffered or created thereafter, except the liens of other mechanics and materialmen, as to which there shall be no priority," imports that prior liens shall be superior to the liens of such mechanics and materialmen, and that mechanics and materialmen stand upon an equality. p. 547.

12. MECHANICS' LIENS.—*Time of Attaching.—Materialmen.*—Mechanics' and materialmen's liens attach at the commencement of the work or the beginning of the furnishing of material. p. 548.

13. MORTGAGES.—*Subsequent Improvements.—Mechanics' Liens.*—But for the mechanics' lien statute a mortgage upon a lot would be a prior lien upon a house subsequently built thereon. p. 548.

14. MECHANICS' LIENS.—*Mortgages.—Priority.*—A mortgage executed upon real estate prior to the beginning of work or the furnishing of materials for a house thereon, is superior to the lien for labor and materials, so far as the real estate is concerned. p. 548.

15. MECHANICS' LIENS.— *Mortgages.— Priorities.*— Mechanics and laborers have equal priorities (1) upon land and building, where the land is unencumbered and the labor is performed and the

materials furnished for a building thereon, (2) upon the building, where the land is under a lease to the one constructing the building, or where there is a prior encumbrance upon the land, (3) upon the land and building, where the labor is commenced, or some of the materials are furnished prior to the execution of the mortgage, and (4) upon the building, where the improvement is made subsequent to the mortgage, but under a contract executed prior to the mortgage, no work being done, or material furnished until after the execution of the mortgage, or where the work is all done, and materials furnished after the mortgage becomes effective. p. 549.

16. MECHANICS' LIENS.—*To what Attach.*—Mechanics' liens attach only to the interest in the land or building which the person has who causes the improvement to be made. p. 550.

17. MECHANICS' LIENS.—*Who May Claim.*—A mechanic's lien is personal to the claimant and he cannot unite with others in filing a notice thereof, there being no privity in interest among them. p. 550.

18. STATUTES.—*Objects.*—*Mechanics' Liens.*—The object of mechanics' lien statutes is to place all claimants to property upon an equal basis. p. 550.

19. SALES.—*Retention of Title.*—*Use of, in Building.*—*Mortgages.*—*Liens.*—Where a vendor sells goods to be used in a building, retaining title thereto, as against a mortgagee and holders of mechanics' liens, he cannot remove such goods, on failure of the builder to pay therefor, where such goods have become such a part of the building that their removal would injure it. p. 551.

20. APPEAL.—*Assent to Judgment.*—*Record.*—*New Trial.*—The Supreme Court cannot hold that appellants assented to the classification of liens in the decree appealed from, where the record shows no assent, and where such classification was made the basis of a motion for a new trial. p. 552.

21. LIENS.—*Waiver.*—*Vendors.*—*Claiming Mechanic's Lien.*—The right to assert a vendor's lien is not waived by the mere filing of a notice claiming a mechanic's lien for the goods sold. p. 552.

22. SALES.—*Retention of Title.*—*Waiver of Mechanics' Liens.*—*Effect.*—Where a vendor sells goods, retaining title thereto until payment, and does not mislead anyone into the belief that the sale is absolute, his waiver of any claim to a mechanic's lien therefor does not estop him from asserting his title to the goods, payment being refused. p. 552.

23. MECHANICS' LIENS.— *Waiver.*— *Consideration.*— *Estoppel.*— Where a holder of a mechanic's lien executes a written waiver of the priority of his claim to a mortgagee in consideration of the payment thereof by such trustee out of a trust fund created for the purpose, such holder is estopped to claim priority, where the

mortgagee has acted upon such waiver and has made payments on such claims.   p. 552.

24.  MECHANICS' LIENS.— *Mortgages.*— *Priorities.*— Mechanics and laborers, in the construction of a building, stand upon an equality with a mortgagee who loans money to the owner during the construction of the building for the purpose of enabling the owner to complete the building and to equip it, such loan being used for such purpose.   pp. 554, 556, 557.

25.  MORTGAGES.— *Purposes.*—*Construction of Building.*— *Mechanics.*—*Laborers.*—Where a mortgage was executed for the purpose of raising money for the completion of a building, mechanics and laborers working thereon may require the use of the money for such purpose.   p. 556.

26.  MORTGAGES.—*Future Advancements.*—*Mechanics' Liens.*—*Priorities.*—A mortgage for future advancement takes precedence over a mechanic's lien for the amount advanced before the taking effect of such lien.   p. 556.

27.  MORTGAGES.— *Mechanics' Liens.*— *Priorities.*— Where a mortgage is executed to create funds to complete a building, and a materialman executes a waiver of his lien in consideration of the payment of his claim by a trust fund created by the mortgage, payments to him before litigation should be credited on the oldest claims, and the remainder of his claim should be postponed, as against the building, until the mortgage is satisfied.   p. 557.

28.  SALES. — *Retention of Title.*— *Use of Goods in Buildings.* — *Mortgages.*—Where goods are sold for use in a building, and they become a part thereof, and the property is sold to satisfy incumbrances, the vendors are entitled only to general judgments for the value of the goods.   p. 558.

29.  MECHANICS' LIENS.—*Enforcement of.*—Where a notice is filed for a materialman's lien on June 15, 1906, and suit is brought June 15, 1907, the lien may be enforced.   p. 558.

30.  MECHANICS' LIENS.— *Extension of Time.*— *Notice.*— *Amended Complaint.*—Where a mortgag e was not made a party to a foreclosure suit, by the holder of a mechanic's lien, for more than one year after the filing of a notice claiming such lien, such notice reciting that the debt was due, such holder cannot enforce his claim as against such mortgagee; and the filing of an amended complaint making such mortgagee a party does not affect the result.   pp. 558, 560.

31.  MECHANICS' LIENS.—*Waiver.*—*Consideration.*—*Estoppel.*— For a mortgagee to defeat a holder of a prior mechanic's lien he must show either a consideration for an alleged waiver, or an estoppel by conduct.   p. 559.

32.  MECHANICS' LIENS.—*Contractors.*—*Constitutional Law.*—Contractors had no right to a mechanic's lien under §8295 Burns

1908, Acts 1899, p. 569, since the title of the act did not include them. p. 559.

33. MECHANICS' LIENS.—*Persons Entitled to.—Corporations.*—Corporations, not being included among "all persons performing labor" (§8295 Burns 1908, Acts 1899, p. 569), cannot become entitled to a mechanic's lien. p. 560.

34. MECHANICS' LIENS.— *Enforcement.— Extension of Time.*— A holder of a mechanic's lien can enforce it against the owner, if he files his complaint therefor within one year from the expiration of credit given for the payment of the sum due. p. 561.

35. MECHANICS' LIENS.—*Persons Entitled to.—Superintendents.*— The mere fact that a person was superintendent of the construction of a building, there being no evidence as to what labors he performed, is not sufficient to entitle him to a mechanic's lien. p. 562.

36. CONTRACTS.—*Adverse Interests.— Corporations Contracting with Their Officers.*—A private corporation may contract with the president of its board of directors for the performance of labor upon a building which it is constructing; but such officer cannot recover as a secret partner with a contractor who secures a contract with the corporation, the directors knowing nothing of such president's interest therein. p. 562.

37. MECHANICS' LIENS.—*Materials Furnished.—Character of.*—A mechanic's lien cannot be established for the furnishing, for a theater building, of carpets, rugs, curtains, curtain poles, draperies, stand covers, pails, mops, brushes, oil, or telephone or telegraph service. p. 563.

From Wabash Circuit Court; *Hiram Brownlee,* Special Judge.

Suit by William R. Yarnelle against Ellsworth Ward and others. From the decree entered, Ward and others appeal. *Affirmed in part. Reversed in part.*

*Alvah Taylor, J. W. Schaufelberger, McCracken & Eikenbary, Rheinfrank & Ohlinger* and *Lewis W. Morgan,* for appellants.

*Shiveley & Switzer, H. M. Hipskind, Will H. Anderson, Elmer E. Slick* and *Sayre & Hunter,* for appellees.

MYERS, J.—There was a decree in the court below marshaling the assets of a corporation organized for building purposes, whose sole property consisted of real estate with a theater building situate upon it. The property was ordered

sold, and the proceeds directed paid in five classes indicated as A to E, both inclusive. Class A consisted of three parties, who are appellees, and who had furnished theatrical scenery, installed an elevator, and furnished the seatings for the theater, under contract by which the title was to remain in them until the property should be paid for. Class B included fourteen parties to this appeal, appellees, who had furnished labor or material in the construction of the building, and who had filed mechanics' liens. Class C consisted of one party only, the Dollar Savings Bank and Trust Company, Trustee, of Toledo, Ohio, one of the appellants, the holder of a mortgage on the real estate, which was executed after the building was ready for the roof. Class D consisted of one party only, the First National Bank of Wabash, one of the appellees herein, holder of a second mortgage upon the property. Class E included all appellees who were given judgments without declaring any specific liens. In the order of the foregoing classes payment was directed by the decree to be made out of the funds to be derived from the sale of the property.

This appeal is prosecuted by appellants Ward, Sweatman and the Harris Construction Company, who were in class B, and the Dollar Savings Bank and Trust Company, Trustee, of class C, against all the other parties to the decree in the court below, including John H. Dicken, receiver of the property.

The main suit was begun by Yarnelle, appellee, as a mechanic's lien holder for a foreclosure of his lien. To this suit he made defendants the Dollar Savings Bank and Trust Company, Trustee, the National Bank of Wabash, and others. The banks filed cross-complaints, and all the laborers and materialmen filed cross-complaints, or independent suits to foreclose their liens. The parties designated under class A filed petitions in the main cause, in which a receiver had been appointed, to be allowed to remove the property put into the building by them. These independent suits were consoli-

dated with the main suit, and tried together as one cause, under an agreement that all matters of defense, affirmative or otherwise, counterclaim or set-off might be given under answers of general denial.

The appellants named in the assignments of errors are Ward, the Dollar Savings Bank and Trust Company, Trustee, Sweatman and the Harris Construction Company, and all the other parties to the decree below are named as appellees. The appellants have assigned errors separately under that designation of parties.

We are confronted at the threshhold of the case by the motion of Dicken, receiver, to dismiss each of the appeals. He assigns as causes: (1) That the interests of 1. Ward, Sweatman and the Harris Construction Company are adverse to those of the savings bank, and that neither of them has been named as appellee in the assignment of error of the savings bank; (2) that the latter has named no parties to the decree as either coappellants, or coappellees. The same motion is addressed to the appeal of each of the other appellants.

So far as appellants Ward, Sweatman and the Harris Construction Company are concerned, no notice of the motion has been given. Ward was given priority over the savings bank, as were all the other parties below of classes A and B, and appellees here, but Ward, the Harris Construction Company, and Sweatman claimed more than they were awarded, so that in both ways they were adverse in interest to the savings bank, as was its interest adverse to them, and the interest of said bank, as well as the interest of the three other appellants, was adverse to all the other parties to the decree. The appeals of Ward and the Dollar Savings Bank and Trust Company, Trustee, were term-time appeals, and it was not necessary that any action should be taken as to their coparties, or that they should be named either as appellants or appellees. §675 Burns 1908, Acts 1895, p. 179. *Keiser* v. *Mills* (1904), 162 Ind. 366; *Gunn* v. *Haworth* (1902), 159

Ind. 419; *Small* v. *Hammes* (1901), 156 Ind. 556; *Lowe* v. *Turpie* (1897), 147 Ind. 652.

By coparties is meant not coparties plaintiff or defendant, but coparties to the decree. *Kaufman* v. *Preston* (1902), 158 Ind. 361; *Hadley* v. *Hill* (1881), 73 Ind. 442; *Hildebrand* v. *Sattley Mfg. Co.* (1900), 25 Ind. App. 218.

The appeals of Sweatman and the Harris Construction Company were vacation appeals, and notice was given under §681 Burns 1908, §640 R. S. 1881. Therefore as to Ward and the savings bank it was not necessary that they make Sweatman and the Harris Construction Company appellees, because they join in the appeal, and assign errors along with the former, and all the other parties were named appellees. Sweatman and the Harris Construction Company gave notice to all parties adverse to them, and join all as appellees who do not join in the appeal.

The appellants, in effect, assign errors against each other, and directly against all the appellees. It was not necessary that there be more than one title to the assignment of errors, for, under that title, all who desired might join in the appeal, and assign errors. *Breyfogle* v. *Stotsenburg* (1897), 148 Ind. 552. The motion to dismiss the appeal is overruled.

The Dollar Savings Bank and Trust Company, Trustee, is put in the paradoxical position of insisting upon a reversal of the decree, while insisting that as the *cestuis que trustent* were not made parties to the proceedings below, they cannot be bound by the decree. It appears from the evidence that the savings bank is named as trustee for a series of bonds, of which $24,500 are held by another corporation not a party to the suit, and $500 by appellant Sweatman. It is not claimed that the mortgagee, trustee, is not a proper party, and the question of a defect of parties was not raised by demurrer or answer. It is sufficient to say that if the failure to make the bondholders parties results in

the decree's being ineffective as to them, the trustee could not complain, and as the names of the holders of the bonds did not appear until upon the trial, if the trust company desired the *cestuis que trustent* to be made parties, it should have disclosed their identity, instead of which it has waged the contest in its own name, and so far as it is concerned is not in a position to raise the question for the first time here. Whether the other parties have or can have anything as against the bondholders without their being made parties, we express no opinion.

It is urged against the savings bank that it has no status here by virtue of §4031 Burns 1908, §2988 R. S. 1881, owing to the fact that it is a nonresident of the State. That question is also for the first time sought to be raised on this appeal. There was no answer or demurrer to the cross-complaint of said savings bank, nor any assignment of error which presents the question. There was jurisdiction of the subject of the action by statute, and the only relief sought by the savings bank was the protection of the lien of the mortgage, and to that extent certainly it had a nominal, if not a pecuniary, interest and a right to be heard, and that right could be asserted under an answer even of general denial. *City of Covington* v. *Ferguson* (1906), 167 Ind. 42.

The only errors properly assigned by the appellants arise upon their several motions for a new trial.

There was a trial and general finding, fixing the priorities of the parties by classes as indicated, and the questions for determination arise upon the action of the court below in marshaling the assets among the various lien holders, as was done by the classification herein stated.

The Wabash Eagles Building Association was the owner of a lot in the city of Wabash, upon which it had begun the erection of a four-story brick theater building. It had progressed with the construction to the point where the structure was about ready for the roof, when on December 15,

1905, it executed a mortgage to the Dollar Savings Bank and Trust Company, Trustee, upon the lot and building, to secure the payment of fifty bonds of $500 each, "to enable it to pay for improvements now in course of erection on its real estate, and further to construct, extend and better its equipment and improvement" upon its real estate described therein, "together with all buildings, improvements, equipment and appurtenances thereunto belonging, or in anywise appertaining thereto" and upon "all its corporate property, grants, rights and interests owned by or belonging to it, including all its property, real, personal and mixed, of every kind and nature whatsoever," with a covenant that the property was free from all incumbrances. This mortgage was recorded in Wabash county, December 16, 1905.

The court below determined the case upon three general propositions: (1) That where there were those who had placed their property in the theater building so as to become parts of the building after a mortgage lien had attached, under a contract retaining title, with the right of removal, and removal would result in the practical dismantling of the theater as such, instead of permitting removal the court directed that the property remain, and that the whole property be sold, and upon sale that the value of the property be paid out of the proceeds of the sale, as the primary charge against such proceeds; (2) that those who were entitled to mechanics' liens, some of whom had liens which, by virtue of contracts made or work done or materials furnished prior to the execution of the mortgage, had priority over it, and that those claims drew to them the remainder of the claim, and also all the mechanics' lien holders, by the doctrine of relation, and by virtue of the provisions of the statute that there should be no priority among the holders of mechanics' liens, and that as the building could not, by reason of its character, be removed from the real estate without severe loss, the lien should attach to the proceeds of the whole property, and gain priority over the mortgage lien; (3) that the mortgage liens

Ward v. Yarnelle—173 Ind. 535.

were junior to both the first and second classes, for the reason that the mortgagees were bound to take notice of the condition of the structure at the time they took their mortgage, and that further material and labor were required to complete the structure, and that a right to mechanics' liens therefore would attach and gain priority over the mortgage, where there were labor and material claims prior to the mortgage, by the doctrine of relation and the statute's preventing priority among the holders of mechanics' liens.

As to the first proposition, the claimants of that class have no equitable lien, for the rule is well established that

8. where there is no statutory lien there is no equitable lien. *Slack* v. *Collins* (1896), 145 Ind. 569; *Cincinnati, etc., R. Co.* v. *Shera* (1905), 36 Ind. App. 315.

Nor do the claimants base their claim upon any equitable grounds, but rely upon ownership of the property, or conditional sales. The claim is made upon purely legal

9. grounds—a claim of legal title. The decree is based upon equitable grounds. It does not appear by the evidence that the removal of this property will injure the building or the property itself. The decree seems to proceed upon the theory that its removal would affect the use as a theater, and that upon equitable grounds the property ought not to be removed. It is true that suits for the fore-

10. closure of mechanics' liens are of an equitable character, and in the nature of proceedings *in rem*. *Albrecht* v. *Foster Lumber Co.* (1890), 126 Ind. 318; *Scott* v. *Goldinghorst* (1890), 123 Ind. 268; *City of Crawfordsville* v. *Barr* (1879), 65 Ind. 367; *Close* v. *Hunt* (1846), 8 Blackf. 254; *Reichert* v. *Krass* (1895), 13 Ind. App. 348.

Conceding that there may be equitable considerations for allowing the value of these appurtenances of the building, as against the property, or the fund arising from its sale,

9. the claims are of no higher character than the statutory claims of mechanics or laborers. So far as the

statute applies or covers the conditions or fixes a status, it controls, and equitable considerations can only arise where the statute fails to be applicable to the conditions, and so far as priority is given to Class A the decree is erroneous. The claimants have not proceeded under any theory of lien, but upon the naked proposition of a right of removal of the property. They stand or fall upon that proposition, and cannot even be classed with those who have acquired liens. We are not informed as to the value of the lot independently of the building, nor what part, if any, of the proceeds of the mortgage to the savings bank was applied upon the cost of constructing the building, except that one bond of $500 was received by appellant Sweatman on his claim. Yarnelle, prior to the execution of the mortgage, had furnished material to the value of $397.12 upon request, without any contract or obligation to furnish more, and after the execution of the mortgage, and up to January 3, 1906, when it is claimed that he executed a waiver of his lien in favor of the mortgage, he furnished, upon request, in the ordinary course of business, material to the value of $737.10, and from January 3, to June 28, 1906, upon request he furnished material to the amount of $3,582.88. On April 6, 1906, up to which time his total furnishing was $4,047.80, he received $1,000, from whom is not shown, and the sum was credited generally on the account, but in filing notice of lien on June 29, 1906, he embraced the three items before enumerated in one sum, after deducting the payment of $1,000 on April 6, 1906. From July 31, 1906, to April 9, 1907, he furnished, on request, material to the value of $2,125.41, for which latter sum he filed notice of lien.

Hartley, Wolfrum, Carpenter Brothers, and King, McNamee & Hipskind, severally had furnished material, but in small amounts, as compared with their whole claims, prior to the execution of the mortgage, and also after its execution, without any agreement or obligation to do so prior to the execution of the mortgage.

All the other claimants fixed as class B by the court had claims for labor or material, or both, contracted after the execution and recording of the mortgage, and these were classed with the claims arising prior to the execution of the mortgage.

The statute provides that "where the owner has only a leasehold interest, or the land is encumbered by mortgage, the lien, so far as concerns the buildings erected by 11. said lien holder, is not impaired by forfeiture of the lease for rent or foreclosure of mortgage; but the same may be sold to satisfy the lien, and removed within ninety days after the sale by the purchaser" (§8296 Burns 1908, Acts 1889, p. 257, §2), and that "all liens so created [by the notice] shall relate to the time when the mechanic or other person began to perform labor or furnish the materials or machinery, and shall have priority over all liens suffered or created thereafter, except the liens of other mechanics and material men, as to which there shall be no priority." §8298 Burns 1908, Acts 1883, p. 140, §4. It is by virtue of these sections that the order of priority fixed by the court is sought to be upheld, and it is insisted that as the claims which arose prior to the execution of the mortgage were by the statute given priority of lien upon the real estate and building, and as there can be no priority among mechanics' lien holders, therefore the later claims must be tacked to the former, to avoid some having priority over others. The statute must receive a reasonable construction. The provision for the attaching of the lien "when the mechanic or other person began to perform labor or furnish the materials or machinery, and shall have priority over all liens suffered or created thereafter except," etc., clearly recognizes the priority of all liens suffered or created theretofore. But the statute is there dealing with incumbrances which antedate the beginning of an improvement or the furnishing of material, incumbrances which are sacred, under the Constitution, from impairment, and not to cases like the one before us where

the execution of the mortgage and the construction of the building are contemporaneous events, and both directed to the attainment of the same end.

The statute by its terms recognizes classes of lien holders in its provision for priority over after-accruing liens, necessarily implying inferiority to prior liens, and just as necessarily creating classes, if the facts create classes, but putting the classes on an equality. This rule is in consonance with the preservation of the rights of others, and just to all persons affected. The provision for the lien's relating to the time when the work was begun or when the material was furnished serves two purposes. (1) To fix a definite period from which to calculate, and (2) as furnishing notice in some degree, as ordinarily the fact of the performance of labor or the furnishing of material is an open and obvious one, and distinctly so, with respect to new buildings. Except for the giving, by statute, of a prior lien upon the building, as distinct from the real estate, priority of the mortgage would not be affected by the enhanced value of the land, by reason of the improvement, and it would take precedence on both the real estate and the building. *Building, etc., Assn.* v. *Coburn* (1898), 150 Ind. 684; *Erwin* v. *Acker* (1890), 126 Ind. 133; *Troth* v. *Hunt* (1847), 8 Blackf. 580; *Zehner* v. *Johnston* (1899), 22 Ind. App. 452; *Carriger* v. *Mackey* (1896), 15 Ind. App. 392; *Thorpe Block Sav., etc., Assn.* v. *James* (1895), 13 Ind. App. 522; 27 Cyc., 236.

The mortgage upon the real estate, if not upon the building, would have priority, even though the contract antedates the mortgage, if the latter precedes any work done or material furnished under the contract. This is the practical effect of the wording of our statute, as to the time the lien begins, so far as priority on the real estate is concerned. 27 Cyc., 245.

Under the code of 1852 (2 R. S. 1852, p. 182), there was no provision that the lien should relate back, and it was held

to attach when the notice was filed, so as to be junior to a mortgage executed on real estate after the building of a house, but before filing the notice of lien.     *Waldo* v. *Walters* (1861), 17 Ind. 534; *Green* v. *Green* (1861), 16 Ind. 253.     Analogous principles, as the date of the assessment, were held to govern with respect to the date of the attaching of a lien for street improvements.     *Langsdale* v. *Nicklaus* (1871), 38 Ind. 289.     Under these holdings, the mechanics' lien law was amended in 1867 (Acts 1867, p. 97, 3 Davis's Supp. 1870, p. 336, §650), to protect the laborers and materialmen, by the embodiment in the statute of the rule of relation.

In the absence of the statute, a claimant's right to priority on a building depends upon its susceptibility of removal, otherwise it is postponed to the prior encumbrance on the land.     27 Cyc., 254.

The statute contemplates different conditions of the realty at different times, or as affected differently at the time that work may be begun or material furnished.     They may be stated:     (1) As cases where there is no building on the land when the improvement begins, and the land is unincumbered, and so remains.     There the liens attach to both realty and the improvement, without distinction or priority, among the materialmen or laborers.     (2) Cases where there is no building, but there is a leasehold, or where the land is encumbered.     There the existing incumbrances take priority on the land, and the materialman and laborer claim equally upon the building or improvement.     (3) Where some labor is performed or material is furnished prior to the execution of a mortgage, in which event, upon the filing of a notice within the statutory period, though after the mortgage is given, the lien relates back of the mortgage to the time when the work is begun or the material furnished, and gains priority both as to the land and the building.     (4) Where the improvement is made after the mortgage is executed, but under a prior contract for the improvement, and

no work is done or material furnished until after the mortgage is executed, or where the work is all done and material furnished under the contract after the mortgage becomes effective as a lien, in which case priority is given on the building alone.

The lien in no event can reach beyond the "right, title, and interest of the owner," whether it be of the real estate or the building, and can only arise from contract with such owner, for it is manifest that the owner of a life estate cannot improve the remainderman out of his property. The contract is not made with the mortgagee or incumbrancer, but with the owner, to the extent of his "right, title and interest." The provision for the lien's relating back is personal to each claimant, and they cannot unite in filing notice of liens. *McGrew* v. *McCarty* (1881), 78 Ind. 496.

But the claim of each relates to the time he begins work or furnishes material, and there is no question of tacking the claims by which the last claimant becomes related to the same period of time as the first claimant in point of service or furnishing, but it is by virtue of the equality provision of the statute that the right is conferred. There is no privity of estate or privity in law between the various lien holders, and the legislature probably went as far as it felt justified in going, in the provisions of the act for the relating back of the claims, in view of our registration laws, and in justice to other persons. While the law ought to receive a liberal interpretation in the interest of the laborer, and the materialman, as the special objects of its concern, yet it must be interpreted in the light of the rights of other persons, and the rights of claimants among themselves. The object is equality as near as may be, but it must be equality, all other things considered, and with the construction of the court below, the rank of a security obtained by contract with the owner may be entirely re-

versed and placed at the foot of the column by a later contract. Our conclusions in this respect are borne out in other jurisdictions. *Crowell* v. *Gilmore* (1861), 18 Cal. 370; *Fudickar* v. *Monroe Athletic Club* (1897), 49 La. Ann. 1457, 22 South. 381; *Finlayson* v. *Crooks* (1891), 47 Minn. 74, 49 N. W. 398; *Henry & Coatswirth Co.* v. *Fisherdick* (1893), 37 Neb. 207, 55 N. W. 643.

The history of the legislation on this subject, in this State and elsewhere, evidences a due regard for prior rights, as conferred by the registration laws. The object of the legislation was to intervene in favor of the mechanic or laborer, and secure to him a return for what he has done in enhancing the value of the land, and still not to injure prior lien holders. *Wimberly* v. *Mayberry* (1891), (Ala.) 14 L. R. A. 305, and notes.

19. The claims of Parkhurst Manufacturing Company, Toomey-Volland Scenic Company, and the American Seating Company, cannot have priority over, or be preferred to the mortgage of the savings bank, and they cannot have equitable priority over the statutory mechanics' liens. If the property furnished can be removed without injury to the building—that is, has not become such a part of it that its removal would injure the building, they should have the right of removal if they so elect; but if the property has so far become a part of the building that its removal would injure such building, and not simply stop the operation of the theater, then, having voluntarily consented to, or put themselves in this position, they cannot be heard to claim the removal of their property, because they voluntarily contract with reference to a condition which they help to create, and they should not be permitted to injure the building. They occupy a position analogous to one who sells property, and retains title, when he knows the purpose is to sell to others. *Winchester Wagon Works, etc., Co.* v. *Carman* (1887), 109 Ind. 31.

There can be no equitable grounds for their taking prior-

ity of, or of being classified with special liens, where they have not sought statutory liens. It is asserted by them that there was assent by all parties to the classification and rank of claim as fixed by the court as class A. To this it must be answered that the record is silent, and it is assigned as a cause for a new trial, and vigorously claimed as ground for reversal, by each of the appellants, that the court erred in fixing this priority.

It is claimed that because the Parkhurst Company filed notice of a mechanic's lien it waived its vendor's lien. Conceding without deciding that the company could waive title by prosecuting an action to a final determination, which would amount to an election, simply filing notice of a mechanic's lien falls far short of an election and waiver of the title.

As against the American Seating Company it is insisted that because after the contract for the seating was made, which antedated the mortgage, and before the seats were delivered, the company executed to the savings bank a waiver of a mechanic's lien, the latter was deceived and misled into believing that the sale was absolute, and that the company is estopped from claiming the property. We are not pointed to any evidence upon the subject to indicate any misleading statement or act upon which any one acted to his, or its detriment. The waiver of a mechanic's lien by the company was entirely consistent with its position as retaining title.

Appellee Yarnelle was awarded $5,624 as principal in class B. Of this sum $397.12 accrued prior to the execution of the mortgage, and after the execution of the mortgage and up to January 3, 1906, material of the value of $737.10 was furnished by him. On January 3, 1906, it is claimed that he executed a waiver of his right to a mechanic's lien. That instrument recites that for the purpose of enabling the savings bank "to secure a first and prior

lien by mortgage on the real estate, said mortgage to be executed by the Wabash Eagles Building Association, the undersigned creditor does hereby release and waive his right to a mechanic's lien on account of any labor or material furnished up to this date for said building on said real estate, in consideration of said Wabash Eagles Building Association O. K.ing the correct bills of this creditor, and said bills to be paid from a fund held by the mortgagee, the Dollar Savings Bank and Trust Company of Toledo, Ohio, from a trust fund held in trust for similar purposes, and only from the fund arising from the consideration given by the mortgagee for its lien, and it is further agreed that said mortgagee's lien shall be first and in all respects superior to the claim of this creditor.'' It will be seen that this instrument purports to have been executed after the mortgage was executed and recorded. Its terms seem to point to a mortgage to be executed thereafter, but if it was executed pursuant to a prior agreement, the estoppel would be complete. On its face it also discloses, as a consideration for the waiver, that a fund in the hands of the mortgagee, trustee, should be applied to the claim, so that if it was an after agreement, appellee Yarnelle would be estopped to assert any priority over the mortgage as to any claim he then held. The contract does not in its terms run to the savings bank, and there is no showing here that it was induced by it to take the mortgage, by any prior agreement of which the written instrument may be the memorandum, or that the savings bank was in any way a party to it, but the instrument recites that the savings bank holds a trust fund arising from the mortgage for the payment of that and similar claims, and it is not otherwise disclosed that it held or paid out the money, or that it did, in fact, rely upon the instrument as a waiver. There are no facts disclosed except by the recital in the instrument by which to connect this alleged waiver in any way with the execution of the mortgage or invoke an estoppel. We do not mean

to be understood that there must have been a consideration other than the instrument itself to create an estoppel, but with only the bare instrument before us, without any disclosure that it was acted upon, and with the indefinite wording it contains, and the fact of its execution later than the mortgage, its force and effect are left to conjecture. There was a payment of $1,000 on April 6, 1906, but whether it was paid from the fund, or under the alleged waiver, or by whom paid, we cannot know. If it was from the fund, or paid by the trustee in reliance upon, or acting under, the agreement, it was applicable to the claim of appellee Yarnelle created prior to January 3, 1906, because the instrument indicates a total waiver of priority to that date, and a reliance on the fund, and if acted on is sufficient. *Acker* v. *Massman* (1895), 12 Ind. App. 696.

All the other claimants set out in class B had claims which arose after the execution of the mortgage without any prior obligation, including such portion of the claims of Hartley, Carpenter Brothers, Wolfrum, King, McNamee & Hipskind, as are later in date than the mortgage lien.

The mortgage purports to have been executed for the purpose of raising funds to complete a building and to equip it, and the evidence discloses that it was about ready for the roof when the mortgage was executed. It was then a substantial part of the real estate, and as between the owner and the mortgagee was real estate, so that we are compelled to take into account the condition of the building. It is not sufficient to postpone the mortgage lien to say that the mortgagee was bound to know that it must be completed, for those who performed labor and furnished material after the mortgage was executed were equally bound to take notice of the mortgage and the disclosed purposes of its execution, and could not ignore them. *Field* v. *Campbell* (1905), 164 Ind. 389. They all engaged in a common enterprise, and none of them are in a situation to claim priority; their equities are equal. *Brooks* v. *Burlington, etc.,*

*R. Co.* (1879), 101 U. S. 443, 25 L. Ed. 1057; *Neilson* v. *Iowa, etc., R. Co.* (1876), 44 Iowa 71.

We infer from the finding of the court, that the removal of the building is impracticable, and, under the peculiar facts in the case, we think it ought not to be removed. The mortgage provides that it is executed to enable the association to "pay for improvements now in the course of erection and completion on its real estate, and further to construct, extend and better the equipment and improvement, * * * and to pay outstanding obligations." The face of the mortgage shows on the one hand the realization that further labor and material were necessary to complete the building, and its terms are a virtual assent, if not an invitation, that this should be done, with the accompanying knowledge that the laborers and materialmen were entitled to liens. On the other, it is notice to the laborer and materialman of a specific lien. If the building had not been begun when the mortgage was executed, the statute would have fixed the priority, but here we have a case where the structure, manifestly of considerable dimensions, was about ready for the roof. The savings bank was not called on to take a mortgage for its protection, but voluntarily did so, knowing that the building in its then condition was practically worthless for any purpose as a building, and that it must be completed. Its action was an invitation to materialmen and laborers to complete the structure, and they in turn had notice of the specific lien and its terms. In good conscience neither ought to have priority over the other. The contribution of each increased the security of the other. In some states it has been held that where the mortgage is given for the purpose of constructing a building, and the money is so used, the mortgage has priority both as to the land and building. *Kiene* v. *Hodge* (1894), 90 Iowa 212, 57 N. W. 717; *Wroten's Assignee* v. *Armat* (1879), 31 Gratt. 220.

That however is a different proposition from the taking

of a mortgage during the process of erection. The element of notice of the objects of the mortgage, either as shown by the mortgage itself, or in some other way, is important and controlling, so that the materialman or laborer shall be fully advised in advance, and that the ordinary rules of law applicable to mortgages for future advances, as affecting junior incumbrances, ought to, and do obtain. *Gaskill* v. *Wales's Executor* (1883), 36 N. J. Eq. 527.

The terms of the mortgage amount to an agreement that the proceeds shall be applied on construction account, and the materialmen and laborers had a right to have it so applied, and if the money was turned over to the association, and by it diverted to other purposes, and was not applied on construction by it or by the mortgagee, the latter could have little claim in equity to share in the fund arising from the property. But if the savings bank made payments on account of labor and material in the building, as it was entitled to do, and had practically agreed under the mortgage to do, or the money was in fact so applied, then, upon the clearest principles of equity and justice, the claims so paid and the rights to liens for them should be taken as embraced in the specific lien of the mortgage, not upon the ground of subrogation, but on the ground of keeping the claim and the accompanying right to a lien alive for the protection of the mortgagee, and all the more must this be true if at the time the mortgage was given or the money advanced the property was not equal in value to the money advanced. The other lien claimants are in no worse position than they would have been if no mortgage had been given and the claims of those who had been paid from the fund had filed notice of their claim, so that the case should stand as the substitution of one specific lien for the right to other specific liens. It has been held that mortgages given for future advances take precedence over mechanics'

liens to the full amount advanced, as well before as after the accrual of the latter lien. 27 Cyc., 239, and cases collected.

Under the act of 1867 (Acts 1867, p. 97, 3 Davis's Supp. 1870, p. 336, §650) the lien related to the time of furnishing the material or the beginning of the work, and under that statute it was uniformly held that a mortgage taken before that time took priority. The present statute contains the same provision as to the relation of the lien, but gives priority on the building, but does not apply to such condition as is disclosed by this record, with a building ready for the roof, and necessary to be completed in order to protect the security of the mortgage, and by force of this necessity, requiring labor and material to complete it, and entitling the materialman and laborer to equal consideration, and that was the manifest intention in the execution of the mortgage. The contribution to that end was ratable among all, and compensation should be on the same basis. Here was notice to the materialman and laborer, that the proceeds of the mortgage were to be applied to the same class of claims as their own, if they furnished the necessaries for completing the building, and they are bound to take notice of the equity thus created. The mortgagee was bound to take notice of the equities which would arise from the fact of the employment of labor and the use of material to complete the building and enhance its security. If the payment of $1,000 to appellee Yarnelle was made from the proceeds of the mortgage, under the provisions of the alleged waiver, it should be credited upon his claim arising prior to January 3, 1906, and the remainder of his claim arising prior to January 3, 1906, must be postponed as between him and the savings bank until the latter is paid. The savings bank should be entitled to all sums paid by it, or under its direction, or for its benefit, for material or labor used in the construction

of the building. If the elevator or scenery can be removed without injury to the building, their removal should be permitted, otherwise those claims must be put in the rank of ordinary debts, without other liens than such as a general judgment gives. The property should be sold as an entirety, and the proceeds paid to the discharge of the mortgage of the savings bank, and to the claims of those who are entitled to mechanics' liens, as one class, with the exception of that portion of the claim of appellee Yarnelle which arose prior to January 3, 1906, which must, if the waiver is found operative, be postponed until the savings bank is paid, after which it stands in the same class with other mechanics' lien holders. If the property shall not sell for a sum sufficient to pay all the claims of the class, the proceeds should be prorated.

The Smith-Hubbard Lumber Company filed a notice of lien June 15, 1906, and on June 15, 1907, filed an amended complaint making the savings bank a party, and was in time to hold a lien. §§240, 1350 Burns 1908, §§240, 1280 R. S. 1881.

Appellee Creighton did not file any pleading making the savings bank a party until more than one year after the filing of the notice to hold a mechanic's lien, which recited that the debt was due, and no attempt was made to show that credit was given—which is held to be necessary in the notice. *Schneider* v. *Kolthoff* (1877), 59 Ind. 568.

As to one not made a party to a complaint until after the expiration of the year for filing, the bar is complete, and is not averted by filing an amended complaint making him a party, for as to him the date of computation is the date of filing. Appellee Creighton is therefore not entitled to a mechanic's lien. *School Town of Monticello* v. *Grant* (1885), 104 Ind. 168; *Floyd* v. *Floyd* (1883), 90 Ind. 130; *Seibs* v. *Engelhardt* (1885), 78 Ala. 508; *Watson* v. *Gardner* (1887), 119 Ill. 312, 10 N. E. 192; *Bennitt* v. *Wilming-*

*ton Star Mining Co.* (1886), 119 Ill. 9, 7 N. E. 498; *North-western Bridge Co.* v. *Tacoma, etc., Co.* (1904), 36 Wash. 333, 78 Pac. 996; *Peterson* v. *Dillon* (1901), 27 Wash. 78, 67 Pac. 397; *Rice* v. *Simpson* (1883), 30 Kan. 28, 1 Pac. 311.

Appellant Harris Construction Company, a corporation, on September 8, 1905, entered into a written contract with the building association to furnish the working tools, and to superintend the construction of the building for a certain per cent of the cost. On December 19, 1905, the company executed a written waiver of all right to a mechanic's lien, and consented to the priority of the mortgage of the savings bank. This agreement is subsequent in time, and no consideration is shown, nor does its terms run to the mortgagee, nor is it shown that it was acted on, nor are any elements of estoppel shown. Prior to June 28, 1906, payment had been made on this agreement to the extent of $1,000 on an alleged claim of $3,318.80, but when paid, or by whom, is not shown. There is a controversy in the evidence as to when the work of superintendence ended, the construction company claiming that it ended June 27, 1906, and the defendants claiming March 27, 1906. The notice of lien was filed August 14, 1906, and suit begun for foreclosure August 13, 1907. The right to a lien was denied under the evidence, but whether by reason of the waiver, or lapse of time, or from lack of right to a lien we cannot determine. There is no evidence as to what the work consisted of, or what the superintendence involved, except as shown by the written agreement that it was "to superintend the construction of said building, and, without expense to first party, to furnish all tools, tackle, hoists and appliances necessary for the rapid erection of said building," and to furnish a competent foreman of all trades which might be employed in the erection of said building, with full power in the name of the building association to make the contracts for such labor and material as might be needed in the construction of the building. Treated as a contractor,

the construction company could not acquire a lien, for the reason that the title of the act did not embrace contractors. *Fleming* v. *Greener* (1909), *ante*, 260; *Indianapolis, etc., Traction Co.* v. *Brennan* (1910), 174 Ind. 1.

As a corporate entity it could not perform labor itself. and therefore could not fall within the class of "all persons performing labor," which, as we held in the case of *Indianapolis, etc., Traction Co.* v. *Brennan, supra,* does not include contractors, and is restricted to those who are commonly known as laborers. The statute being one in derogation of the common law, is to be strictly interpreted as to those who are entitled to make avail of its provisions, but is to be liberally interpreted in their favor when they fall within its provisions. Furnishing tools, or machinery, or appliances for carrying on the work does not authorize a lien. *Oppenheimer* v. *Morrell* (1888), 118 Pa. St. 189, 12 Atl. 307; *Basshor* v. *Baltimore, etc., R. Co.* (1885), 65 Md. 99, 3 Atl. 285.

We think the construction company was not a laborer within the letter or spirit of the act, and is not entitled to a lien.

Appellee Henley filed his notice of lien on June 15, 1906. He did not file a complaint against the savings bank until December 23, 1907, and is in the same category with appellee Creighton, and is not entitled to a lien.

Appellant Sweatman filed his notice of lien on June 18, 1906. His complaint was filed October 24, 1907. He claims that on or about May 21, 1906, a credit was given until sometime in October, 1906, no date of the extension being fixed. His notice did not state that credit had been extended, but stated that the demand was due. The most that is shown, is that there was a promise to pay sometime in October, acquiesced in by Sweatman. It was held in the cases of *Wade* v. *Reitz* (1862), 18 Ind. 307, and *Schneider* v. *Kolthoff, supra,* that as between the claimant and subsequent purchasers, if credit is given, the notice must so show. The same thing

must be true as between the claimant, and other encumbrancers, for if the year has expired when their suits are brought, with no notice of the credit, they would not be required to make a claimant a party. The question is one of notice. The claim is purely statutory. This rule does not apply as between the claimant and the owner, for the latter has notice if credit was extended. *Albrecht* v. *Foster Lumber Co.* (1890), 126 Ind. 318.

As against the other encumbrancers, appellant Sweatman is not entitled to a lien, but as against the owner, if credit was given, and his complaint was filed within one year from the expiration of the credit, he is. Appellant Ward had a contract dated May 22, 1905, with the building association to superintend the work of construction at a fixed price. The work under this contract began June 3, 1905, and ended April 1, 1907, and the amount claimed was $930. He filed notice of lien on March 22, 1907.

One Bone was a contractor for plastering, under date of December 26, 1906, and Ward was interested with Bone in the contract, being a secret copartner in the business generally. Later he purchased and took an assignment of Bone's interest. The business was carried on under the name of Guy P. Bone. Ward also took an independent contract January 1, 1907, with the association to plaster a portion of the structure. The work under the Bone contract was completed and notice of a lien filed January 21, 1907, for $2,800. Under the contract of January 1, 1907, the work was completed on May 22, 1907, and notice of a lien was filed for $327. His cross-complaint in the original case was filed on January 17, 1908. He seeks priority over the savings bank mortgage, upon the theory that the building was only partly constructed when the mortgage was executed, and its finishing necessary, and that the savings bank had knowledge of the fact when it took the mortgage, and that the mechanics' liens have priority over the mortgage. In the finding Ward's claim under

his contract of January 1, 1907, was put in class B, to the amount of $396.03. Under class E, Ward's claim for $756.90, under his contract for superintendence was allowed, and, upon the theory that he was not a laborer, a lien was denied, and nothing was allowed on account of the Bone contract. There was paid on the Bone contract $500, and on November 27, 1906, $200 was paid to Ward. During the entire time the building was under construction Ward was the president of the board of directors of the building association, and his claim under the Bone contract was disallowed, upon the theory that his secret interest in that contract rendered it void, under the same rule as in case of public corporations. Ward was not present at the time of the award of the Bone contract, and did not act upon it, nor was his vote necessary to award it, and the contract was let upon competitive bids. The fact that Ward was a copartner with Bone was not known to the other directors, but no question is raised as to the good faith with which the work was done, or as to its value being less than the contract price. Ward's contract with the association was "to superintend the construction of the building." In that capacity he was not an officer of the corporation, but the evidence is wholly silent as to the character of his duties, or of the work done by him, or that he did any work, other than such as the word "superintendent" implies, so that he does not make it appear that he comes within the class to whom the statute gives a lien as a laborer. As to the claim of Ward under the Bone contract, he does not stand in the relation of a public official, or one owing a duty to the public, as to which the law is so jealous that it will not permit him to deal with himself, or with the subject-matter of his trust, no matter how beneficial it might be to the public. The law looks to the tendency and not to the effect. Nor does the case fall within the rule stated in the cases of *City Nat. Bank* v. *Goshen Wollen Mills Co.* (1904), 163 Ind. 214,

*Nappanee Canning Co.* v. *Reid, Murdoch & Co.* (1903), 159 Ind. 614, or *Levering* v. *Bimel* (1897), 146 Ind. 545, for in each of those cases there was full notice of the act of which complaint was made. But it does fall within that class of cases where the duty of an agent to his principal is at variance with his own interest, and the law will not permit him to gain any rights under his act, without a full disclosure by him, no matter whether it benefits or harms his principal, and in this particular the public policy is the same as with respect to public officers. Mechem, Agency, §§454-456; Greenhood, Public Policy, pp. 292, 302.

The decree below seems to be right upon both the foregoing claims arising under the first and second paragraphs of the complaint—and appellant Ward seems to have recovered upon the third paragraph, or for the work done by him under an open contract for plastering—but the decree is erroneous as against the savings bank, as to the question of priority.

Appellants Beitman, Wolf & Co. were allowed a lien for $396.03 out of a total claim for $534.24. The three principal items of the bill of particulars are for carpets, aggregating $397.75; the remainder of the claim is made up of items such as making and laying carpets, furnishing rugs, curtains, curtain poles, draperies, stand covers, pails, mops, brushes, oil, and other small items, and for telephone and telegraph messages, and supplies generally used in caring for the building. We are not able to discover a single item of the bill which is the subject of a mechanic's lien, and the claim stands, as exhibited by the bill of particulars, without any explanation.

The decree is affirmed as to appellants Ward, the Harris Construction Company, and Sweatman, and reversed as to the savings bank, with instructions to the court below to sustain the motion for a new trial by the savings bank, and for further proceedings not inconsistent with this opinion. Ap-

pellant savings bank shall recover its costs, and one-half the costs of the appeal shall be taxed to appellants Ward, Sweatman, and the Harris Construction Company, and the other half to the appellees.