**MURDOCK CONSTRUCTION MANAGEMENT, INC.,
Appellant–Defendant,**

v.

**EASTERN STAR MISSIONARY BAPTIST CHURCH, INC.,
Appellee–Plaintiff.**

No. 49A02–0107–CV–445.

Court of Appeals of Indiana.

April 25, 2002.

---

---

Neil L. Weisman, South Bend, IN, Attorney for Appellant.

Robert F. Wagner, Theodore L. Nicholas, Anthony M. Eleftheri, Lewis & Wagner, Indianapolis, IN, Attorneys for Appellee.

## OPINION

FRIEDLANDER, Judge.

Murdock Construction Management, Inc. (Murdock) appeals the trial court's grant of summary judgment in favor of Eastern Star Missionary Baptist Church, Inc. (Eastern Star). Murdock raises the following restated issues for review: Did the trial court err in determining that Murdock is not, as a matter of law, entitled to a mechanic's lien under Ind.Code § 32–8–3–1?

We affirm.

The facts most favorable to the nonmovant are that on June 3, 1996, Eastern Star and Murdock entered into a "Memorandum of Understanding" (Memorandum) under which Murdock agreed to assist Eastern Star as Project Manager with the development of a Building Program from the time of execution of the Memorandum to the beginning of construction. Once construction commenced, Murdock would become Construction Manager for the project until completion. Construction was for an Educational and Conferencing Center for Eastern Star. On November 4, 1996, Eastern Star and Murdock entered into an A.I.A. (American Institute of Architects) Standard Form of Agreement Between Owner and Construction Manager (Construction Manager Agreement). Under the Construction Manager Agreement, Murdock was charged with furthering the interest of Eastern Star by furnishing Murdock's skill, judgment, and business administration and management services during the preconstruction and construction phases of the project. A separate architect was employed for the project. At no time did Murdock contract to provide architectural, engineering, or surveying services. Murdock characterizes its responsibilities under the Memorandum and Construction Manager Contract as:

[including] but not limited to providing construction skill and expertise and labor in the project planning, architectural design assistance, recommendations regarding budget and cost analysis, labor and material analysis, development of contractor bid qualifications, evaluation and analysis of contractor bids, development of construction scheduling plans, administration of contracts for construction, monitoring construction costs and recommending alternatives [sic] solutions when design details affect construction feasibility, cost or schedules, providing on-site supervision of construction, coordination of contractors, recommending desirable changes to the architect and owner and reviewing requests for changes from contractors and preparing change orders, obtaining building permits, evaluating work of the individual contractors, reviewing shop drawings, product date and samples, maintaining the project site, arranging for delivery, storage, protection and se-

curity of materials, systems and equipment, and assisting the architect in determining when the project or portions of the project are substantially complete. Appellant's Brief at 3.

Under the Memorandum, Eastern Star could elect to have Murdock perform the actual construction of the project, instead of performing the services of construction manager, by entering into a separate Negotiated General Contract Agreement. Article 4 of the Construction Manager Agreement further states that "[c]onstruction support activities, if provided by the Construction Manager, shall be governed by separate contractual arrangements...." *Appellant's Appendix* at 5.1(A), Article 4.[1] Finally, an "Additional Services" provision in the Construction Manager Agreement also required Murdock to obtain written authorization before undertaking certain other activities in addition to the services agreed to under the Construction Manager Agreement. It states in relevant part:

1.3  ADDITIONAL SERVICES

The following Additional Services shall be performed upon authorization in writing from the Owner [Eastern Star] and shall be paid for as provided in this Agreement.

1.3.5  Services made necessary by the default of a Contractor.

1.3.9  Providing any other services not otherwise included in this Agreement.

*Appellant's Appendix* at 5.1(A), Article 1.

Murdock's fee was based on a percentage of the final construction costs associated with the Project. Based on an estimated final construction cost of $8,000,000.00, Murdock's total fee was projected at $560,000.00. Murdock was not an owner

of the project or any Eastern Star real estate. Murdock was not entitled to any profits from any sale of the property or activity of Eastern Star or use of the building when completed. Murdock's interest in the project was limited to its fees for work performed as a Construction Manager as defined by the Construction Manager Agreement. Murdock's relationship with Eastern Star and the project were to terminate upon construction completion.

On November 20, 1998, Eastern Star terminated Murdock's services under the Construction Manager Agreement. After making repeated demands to Eastern Star to pay the balance due for materials furnished and labor performed by Murdock pursuant to the Construction Manager Agreement at the Educational and Conferencing Center, Murdock recorded a Sworn Statement and Notice of Intention to hold mechanic's lien in the amount of $298,043.38. Subsequently, Eastern Star initiated action and filed its Complaint for Declaratory Judgment alleging that Murdock had no lienable claim under the mechanic's lien statute and that the lien was void as a matter of law. On March 15, 2001 Eastern Star filed its Motion for Summary Judgment, Designation of Evidence in Support of its Motion for Summary Judgment, and Brief in Support of its Motion for Summary Judgment. Murdock responded with its own motion, Designation of Evidence, and Memorandum in Opposition. After hearing oral argument, the trial court granted summary judgment for Eastern Star.

When reviewing a grant of summary judgment, we apply the same standard as the trial court. Summary judgment is appropriate only where the designated evi-

---

**1.** We caution counsel for appellant to observe the appropriate appellate procedures for the form and assembly of appendices. Under

Ind. Appellate Rule 51(C), "[a]ll pages of the Appendix shall be numbered at the bottom consecutively[.]"

dentiary material shows that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Hayden v. Paragon Steakhouse*, 731 N.E.2d 456 (Ind.Ct.App. 2000). The initial burden is on the party seeking summary judgment to show the propriety of granting the motion. *Id.* Once established, the burden then shifts to the nonmovant to respond with specifically designated facts that establish the existence of a genuine issue for trial. *Id.*

On review, we may not search the entire record to support the judgment, but may only consider that evidence which was specifically designated to the trial court. A presumption of validity clothes a trial court's grant of summary judgment, and the appellant has the burden of demonstrating to this Court that the trial court's grant of summary judgment was erroneous. However, we must carefully assess the trial court's decision to ensure the non-movant was not improperly denied his day in court.

*Id.* at 458 (citations omitted). We resolve all facts and reasonable inferences therefrom in favor of the nonmoving party. *Merchants Nat'l Bank v. Simrell's Sports Bar & Grill, Inc.*, 741 N.E.2d 383 (Ind.Ct. App.2000).

■ The historical origin and purpose of the mechanic's lien statutes was to make a property owner an involuntary guarantor of payments for the reasonable value of improvements made to real estate by the physical labor or materials furnished by laborers or materialmen. *Premier Inv. v. Suites of America, Inc.*, 644 N.E.2d 124 (Ind.1994). Thus, the core function of mechanic's lien laws is to prevent the inequity of a property owner enjoying the benefits of the labor and materials furnished by others without recompense. *Id.*

A mechanic's lien was a remedy unknown at common law and is purely a statutory creation. Provisions relating to the creation, existence or persons entitled to claim a mechanic's lien are to be narrowly construed since the lien rights created are in derogation of common law. Because the mechanic's lien is purely a creature of statute, the burden is on the party asserting the lien to bring itself clearly within the strictures of the statute.

*Id.* at 127 (citations omitted).

■ The legislature expressly sets forth those persons entitled to mechanic's liens. Specifically, Ind.Code Ann. § 32–8–3–1 (West 2001) provides:

That contractors, subcontractors, mechanics, lessors leasing construction and other equipment and tools, .... journeymen, laborers and all other persons performing labor or furnishing materials or machinery, including the leasing of equipment or tools used, for the erection, altering, repairing or removing any house, mill, manufactory or other building .... may have a lien separately or jointly upon the house, mill, manufactory or other building .... which they may have erected, altered, repaired, moved or removed or for which they may have furnished materials or machinery of any description....

Furthermore, IC § 32–8–25–1 (West 2001) was enacted following *Beeson v. Overpeck*, 112 Ind.App. 195, 44 N.E.2d 195 (1942) to codify the expansion of those persons entitled to the mechanic's lien to include registered professional engineers, registered land surveyors, and registered architects. The lists in these two statutes are exclusive, i.e., unless Murdock falls within one or more of these listed categories, it is not entitled to the benefits of the mechanic's lien statute. Thus, it must show that under a proper construction of the mechanic's lien statute, a construction manager

acting as it did in this case may acquire a mechanic's lien.

Murdock argues that it qualifies as a "laborer" or "persons performing labor or furnishing materials" as those terms and that phrase are used in the mechanic's lien statute. Eastern Star counters that Murdock provided only supervisory services, and thus, is not entitled to the benefits of the statute.

In determining whether Murdock's services are the type of "labor or materials" that are lienable under the mechanic's lien statute, we conclude that the recent supreme court opinion, *Premier Inv. v. Suites of America, Inc.*, 644 N.E.2d 124, addressing the issue of mechanic's liens where supervisory services are involved, is of controlling authority.

In *Premier*, the developer, Premier Investments, entered into a contract with Howard Johnson Franchise Systems, Inc. (Howard Johnson) under which Premier Investments agreed to develop certain real estate into a hotel. The contract required Premier Investments to "develop plans, specifications and construction budgets, and otherwise be responsible for the construction, equipping, staffing, and opening of the hotel." *Id.* at 125–26. Specifically, Premier Investments obtained the necessary zoning and building approvals, bid the project and hired the general contractor, monitored the construction on a day-to-day basis, made sure that the owner was not paying for any materials that were not on site and that the materials on site were to be used in construction of the hotel. Furthermore, Premier Investments coordinat-

ed with the architects, recommended and authorized design and construction changes. The agreement was a classic "turn-key" arrangement where developer, using financing provided by the owner, would deliver to the owner a completed hotel ready to turn the key and begin business. *Id.* at 126.

Soon after ownership of the property was conveyed from Howard Johnson to Fairfield Development IV, Inc. (Fairfield), Fairfield ceased construction. Premier Investments then filed a Sworn Statement and Notice of Intention to Hold Mechanic's Lien. Subsequently, ownership was conveyed to Suites of America, Inc. pursuant to an order by the Bankruptcy Court. At trial, Suites of America, Inc. filed a Motion for Partial Summary Judgment contending that Premier Investments did not have a valid mechanic's lien. This court reversed the trial court's grant of partial summary judgment in favor of Suites of America, Inc., determining that Premier Investments's mechanic's lien was void as a matter of law. The supreme court granted transfer. The decision of the court of appeals was vacated, and the supreme court affirmed the trial court's grant of partial summary judgment in favor of Suites of America, Inc.

The court concluded that in narrowly construing the statute, Premier Investments was not included in the categories of persons entitled to a mechanic's lien, as purely supervisory services do not constitute labor under the mechanic's lien statute.[2] The court then indicated that even if

---

**2.** The court was careful to distinguish purely supervisory services from those inexorably tied to the labor and materials provided. In its discussion, the court referenced its opinion of *Mann v. Schnarr,* 228 Ind. 654, 95 N.E.2d 138 (1950). In *Mann v. Schnarr,* Schnarr was to furnish all materials and labor in addi- tion to supervising the construction of a brick building in consideration for payment of the actual cost of all materials and labor and 10% thereof. Schnarr's compensation for its supervisory services was inexorably tied to its physical acts of labor, and was thus lienable.

the benefits of the statute were available to those providing supervisory services, Premier Investments would likely be barred from asserting a mechanic's lien due to its relationship with the owner.[3]

According to the record, Murdock performed on-site supervision and coordination of the work, arranging for delivery and storage, protection and security for the materials, systems, and equipment used for the Building Program, as well as site clean-up. Murdock also used its construction skill and expertise in both developing plans and specifications used in the construction and in the supervision of the construction. We fail to see any meaningful distinction between the purely supervisory duties performed by Murdock and those performed by the developer in *Premier*. Consistent with the supreme court's holding in *Premier*, we conclude that Murdock is not a "laborer" within the meaning of the mechanic's lien statute.

Moreover, while demonstrating its familiarity with this court's decisions in *Beeson v. Overpeck*, 112 Ind.App. 195, 44 N.E.2d 195,[4] and *Marcisz v. Osborne*, 124 Ind.App. 574, 118 N.E.2d 378 (1954),[5] the supreme court determined that Premier Investments's relationship with the owner clearly placed it on the owner's side of the dividing line. The developer was "in the class of those who would 'enjoy[] the fruits of the labor and materials furnished by others.'" *Id.* (citing *Moore–Mansfield Constr. Co. v. Indianapolis, Newcastle and Toledo Ry. Co.*, 179 Ind. 356, 390, 101 N.E. 296, 309 (1913)). Permitting a mechanic's lien under the circumstances would have resulted in "vaulting an essentially equity stakeholder into a position of parity or even superiority to a project's secured lenders." *Id.* at 131.

3. The court suggested that there was a rough dividing line with owners on one side and those on the other side, specifically identified by the statute, who actually supply labor and materials. In addition to a development fee, Premier Investments was entitled to "a 25% position in both the operating profits and any gain from the sale or refinancing of the project." *Premier Inv. v. Suites of America, Inc.*, 644 N.E.2d at 130. The court determined that Premier Investments's relationship with the owner clearly placed it on the owner's side of the dividing line. The developer was "in the class of those who would 'enjoy[] the fruits of the labor and materials furnished by others.'" *Id.* (citing *Moore–Mansfield Constr. Co. v. Indianapolis, Newcastle and Toledo Ry. Co.*, 179 Ind. 356, 390, 101 N.E. 296, 309 (1913)). Permitting a mechanic's lien under the circumstances would have resulted in "vaulting an essentially equity stakeholder into a position of parity or even superiority to a project's secured lenders." *Id.* at 131.

Although part of Murdock's fee was based on a percentage of actual construction costs, after completion of the building, Murdock's relationship with Eastern Star and the project would terminate. It was not entitled to profit from any sale of the property or activity of Eastern Star or use of the building after completion. As such, we reject any argument by Eastern Star that Murdock was an owner or equity participant in the Building Program. While we agree with Murdock that its relationship with Eastern Star is distinguishable from that in *Premier*, however, we find the first part of the supreme court's opinion in *Premier* to be dispositive, and therefore conclude that Murdock is nevertheless barred from asserting a mechanic's lien.

4. In *Beeson*, the court held that an architect's services were lienable because they constituted labor. The court stated:

"The language of our statute is general in its terms, and, in our opinion embraces all persons who perform 'any labor.' We are unable to draw the distinction between one who puts his labor into plans for the erection of a building and actually supervises its erection, and one who in the role of a bricklayer or carpenter actually performs a manual service."

*Beeson v. Overpeck*, 112 Ind.App. at 199, 44 N.E.2d at 197 (quoting *Cain v. Rea*, 159 Va. 446, 166 S.E. 478, 480 (1932)).

5. In *Marcisz v. Osborne*, the court permitted Osborne to assert a mechanic's lien for supervisory labor performed in conjunction with ordinary manual labor performed in the construction of a dwelling home. The court observed:

It is generally held that enforcement of a claim for supervisory labor in the construction of property is permitted under mechanic's lien statutes in most jurisdictions, and Indiana follows the majority rule in this regard. The reasoning of the court in the foregoing case is that "one who labors with body or mind, or both, is a laborer" and held that an architect who drew plans and specifications and did supervision of the construction was a laborer under the lien statute.

*Marcisz v. Osborne*, 124 Ind.App. at 580, 118 N.E.2d at 380 (citations omitted).

court expressly declined to follow them. In particular, the supreme court indicated that the opinions were in conflict with its own opinion in *Ward v. Yarnelle*, 173 Ind. 535, 91 N.E. 7 (Ind.1910). We note that our decision today preserves the holding of *Ward v. Yarnelle* establishing that supervisory services are not lienable. In *Ward v. Yarnelle*, the court stated that the evidence was "wholly silent as to the character of [Ward's] duties, or of the work done by him, or that he did any work, other than such as the word 'superintend' implies, so that he does not make it appear that he comes within the class to whom the statute gives a lien as a laborer." *Id.* 173 Ind. at 561, 91 N.E. at 18. Similarly, we conclude that the evidence fails to demonstrate that Murdock's duties consisted of anything more than mere supervision.[6]

In narrowly construing the mechanic's lien statute, we conclude that Murdock's claim seeks compensation for supervisory services that are not covered. If the legislature intends that construction managers in the same position as Murdock in this case are entitled to a mechanic's lien for their services, it must expressly so provide. The trial court did not err in grant-

ing summary judgment in favor of Eastern Star.[7]

Judgment affirmed.

BARNES and ROBB, JJ., concur.

---

**6.** The parties also devote a portion of their briefs to discussing whether the project was "intended" to be a no-lien project from the start, i.e., no one involved in the project, including Murdock, was entitled to a lien, or whether the no-lien provision was only required to be executed on contracts with subcontractors obtained *after* Eastern Star secured financing. As part of its initial obligations, Murdock negotiated and prepared contracts for Eastern Star to sign with various contractors utilized in the actual physical construction of the project. Neither the Memorandum nor the Construction Manager Agreement refer to or contain no-lien provisions, and there is no requirement that Mur-

dock only negotiate no-lien contracts with prospective contractors. Because we conclude that Murdock has no standing to assert a mechanic's lien, however, we need not address this argument.

**7.** Eastern Star urges this court to grant its earlier motion to strike certain portions of Murdock's designated evidence in opposition to Eastern Star's Motion for Summary Judgment. Because we conclude that the trial court did not err in granting summary judgment for Eastern Star, we need not address this issue on appeal.