HAROLD McCOMB & SON, INC.,
Appellant–Plaintiff,

and

American Renovations of Indiana, Inc.,
Appellant–Intervening Defen-
dant/Cross–Plaintiff,

v.

JPMORGAN CHASE BANK, NA,
Appellee–Defendant.

No. 02A04–0802–CV–60.

Court of Appeals of Indiana.

Sept. 3, 2008.

Jeffrey P. Smith, David K. Hawk, Hawk,
Haynie, Kammeyer & Chickedantz LLP,
Michael D. Harmeyer, Harmeyer Law
Firm LLC, Fort Wayne, IN, Attorneys for
Appellants.

Christine M. Stach, Theodore T. Storer,
Rotherberg Logan & Warsco LLP, Fort
Wayne, IN, Attorneys for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellants–Mechanic's Lienholders, Ha-
rold McComb & Son, Inc. (McComb) and
American Renovations of Indiana, Inc.
(ARI) (collectively, Lienholders), appeal

the trial court's grant of Appellee–Mortgagee's, JPMorgan Chase Bank, NA (Chase), motion for partial summary judgment in these consolidated actions against Indian Village Apartments, LLC (Indian Village) for foreclosure of the Lienholders' mechanic's liens and Chase's mortgage.

We affirm.

## ISSUES

The Lienholders present two issues for our review, which we restate as:

(1) Whether the Lienholders have standing to challenge Chase's foreclosure action against Indian Village; and

(2) Whether the trial court properly prioritized the liens of the respective parties.

## FACTS AND PROCEDURAL HISTORY

On June 13, 2003, McComb entered into a construction contract with Indian Village, under which McComb would serve as the general contractor for the construction of the Indian Village Garden Apartments in Fort Wayne, Allen County, Indiana. On July 7, 2003, Indian Village entered into a Construction Loan Agreement with Bank One, NA (Bank One), by which Bank One agreed to provide an $850,000 line of credit and a $2,650,000 construction loan to be used by Indian Village "to acquire and rehabilitate 252-story buildings containing 100 units of housing for senior citizens together with on-site improvements" at 4605 Kekionga Drive in Fort Wayne. (Appellants' App. p. 153). The same day, Indian Village signed a Note promising to repay the construction loan by February 7, 2005. To secure the payment of the debt, Indian Village signed a "Mortgage, Security Agreement, Assignment of Leases and

Rents and Fixture Filing" (Mortgage I).[1] On July 11, 2003, Mortgage I was recorded with the Allen County Recorder.

As general contractor, McComb's work included the provision and installation of cabinets, windows, doors, washers and dryers, vinyl siding, gutters and downspouts, water heaters, and furnaces. At some point, ARI took over as general contractor on the project and did work that included asphalt paving/resurfacing, sidewalk construction, assembly of a carport, and installation of various interior items such as showers, shower doors, vinyl flooring, porcelain tile, lighting fixtures, cabinetry hardware, and drywall. By November 2004, the rehabilitation of the buildings at 4605 Kekionga Drive was substantially complete. On November 18, 2004, Bank One disbursed $175,000 of the construction loan to Indian Village for the purchase of land and a building at 3007 Engle Road to be used for the construction of a community center for residents of Indian Village. The same day, to further secure the payment of its debt to Bank One, Indian Village executed a second mortgage (Mortgage II) in favor of Bank One as to 3007 Engle Road. On December 14, 2004, Mortgage II was recorded with the Allen County Recorder.

By February 2005, despite having substantially completed their work, the Lienholders had not been paid in full. On February 11, 2005, ARI filed two mechanic's liens against Indian Village totaling $200,994.79. On February 16 and 23, 2005, McComb filed two mechanic's liens against Indian Village totaling $245,099.89. On April 13, 2005, McComb, which still had not been paid, filed a complaint against Indian Village under cause number 02D01–0504–CC–392 (Cause No. 392) seeking to foreclose its mechanic's liens. ARI, having

1. The debt was further secured by several guarantees and collateral assignments executed by a number of different entities. Those agreements are not relevant to this appeal.

not been paid either, sought and received permission to intervene in McComb's action, and on March 2, 2006, as Intervening Defendant/CrossPlaintiff, filed its Amended Cross–Claim Complaint for Foreclosure against Indian Village under Cause No. 392 seeking to foreclose its own mechanic's liens.

Meanwhile, Chase, successor by merger to Bank One, was also trying to get paid by Indian Village. Indian Village had not paid off its loan by the date specified in the Note—February 7, 2005—so on February 15, 2005, Chase sent a Notice of Default and Demand for Immediate Payment. On March 24, 2006, Chase still had not been paid, so it filed a complaint under cause number 02D01–0603–MF–80 (Cause No. 80) seeking damages and the foreclosure of Mortgage I and Mortgage II. Chase alleged that the outstanding balance on its loan to Indian Village was $2,539,441.41, in addition to interest that was still accruing. By the time Chase filed its complaint, Indian Village had been forced into a receivership due to financial difficulties.

On August 21, 2006, the trial court issued an order consolidating Chase's action—Cause No. 80—into McComb and ARI's action-Cause No. 392. On February 20, 2007, Chase filed a motion for partial summary judgment. On October 29, 2007, after extensive briefing, the trial court issued an order granting Chase's motion. The trial court concluded, among other things, that McComb has no legal standing to challenge Chase's foreclosure action because it is not a party to the Construction Loan Agreement or the Note between Indian Village and Chase, is not in privity with a party, and is not a third-party beneficiary of the contract. The trial court ordered foreclosure of Chase's mortgages and determined that Chase's mortgage liens "are superior to the interests of all of the other Defendants," including the Lien-

holders. (Appellants' App. p. 50). On November 16, 2007, the trial court issued its Judgment and Decree Foreclosing Notes and Mortgage and for Replevin of Collateral (Decree). The trial court awarded Chase a judgment of $3,214,733.91 and ordered that the real estate be sold to satisfy the judgment. On November 28, 2007, the Lienholders filed motions to correct error, which the trial court denied on December 28, 2007. On January 28, 2007, the Lienholders filed a joint notice of appeal, and the next day, January 29, 2008, 4605 Kekionga Drive and 3007 Engle Road were sold at a sheriff's sale for $2,180,000 and $100,000, respectively.

The Lienholders now appeal. Additional facts will be provided as necessary.

### DISCUSSION AND DECISION

On appeal, the Lienholders challenge the trial court's grant of Chase's motion for partial summary judgment. Generally, when reviewing the grant or denial of a motion for summary judgment, we must determine whether there is a genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). Here, the facts relevant to the appeal are undisputed, and the issues presented are standing and statutory interpretation, both questions of law. *Common Council of Michigan City v. Board of Zoning Appeals of Michigan City*, 881 N.E.2d 1012, 1014 (Ind.Ct.App.2008) ("The question of whether a party has standing is purely one of law[.]"); *Crum v. City of Terre Haute ex rel. Dep't of Redevelopment*, 812 N.E.2d 164, 166 (Ind.Ct.App.2004) ("Interpretation of a statute is purely a question of law[.]"). In reviewing a grant of summary judgment where the facts are undisputed and the issues presented are pure questions of law, we review the matter *de novo*. *Crum*, 812 N.E.2d at 166. Nonetheless, we note

that the trial court entered thorough orders in this case that greatly facilitated our review.

## I. *Standing to Challenge Foreclosure*

■ McComb first argues that the trial court erroneously ordered foreclosure of Chase's mortgages.[2] Specifically, McComb contends that Chase was the first party to breach the Construction Loan Agreement and the Note and therefore could not seek to enforce the contracts against Indian Village by foreclosing the mortgages. McComb relies upon our statement in *Wilson v. Lincoln Federal Savings Bank*, 790 N.E.2d 1042, 1048 (Ind. Ct.App.2003), that "where a party is in material breach of a contract, he may not maintain an action against the other party or seek to enforce the contract against the other party if that party later breaches the contract." The trial court did not reach the merits of McComb's breach argument, finding instead that McComb lacked standing to lodge contract defenses on Indian Village's behalf. We agree with the trial court.

■ McComb contends that Chase first breached the Construction Loan Agreement and the Note by prematurely declaring Indian Village to be in default and by disbursing to Indian Village funds properly owing to McComb.[3] Even if we assume that McComb is correct that Chase breached the Construction Loan Agreement and the Note and was the first to do so, McComb has no legal standing to complain. As stated by the United States Supreme Court over a century ago, "The parties to a contract are the ones to complain of a breach, and if they are satisfied with the disposition which has been made of it and of all claims under it, a third party has no right to insist that it has been broken." *Williams v. Eggleston*, 170 U.S. 304, 309, 18 S.Ct. 617, 42 L.Ed. 1047 (1898). This principle is embedded in Indiana law. In *Gonzales v. Kil Nam Chun*, 465 N.E.2d 727, 729 (Ind.Ct.App. 1984), the case relied upon by the trial court, we held that only the parties to a contract, those in privity with the parties, and intended third-party beneficiaries under the contract may seek to enforce the contract. McComb does not contend that it falls into any of these three categories with regard to the Construction Loan Agreement and the Note between Chase and Indian Village. As such, the trial court did not err in determining that McComb lacked standing to challenge Chase's foreclosure action.

## II. *Priority*

Next, the Lienholders argue that even if the trial court properly concluded that

---

**2.** ARI does not join McComb on this issue.

**3.** Regarding this second claim, McComb points to Chase's disbursement of $175,000 to Indian Village for the purchase of the land and building at 3007 Engle Road and contends that the funds were taken from funds being retained by Chase for payment to McComb upon substantial completion of the project, pursuant to a retainage agreement. The money in such a "retainage fund" ultimately belongs to the general contractor—here, McComb—but is retained to ensure that the work is completed and that subcontractors are paid. *Indianapolis Pub. Hous. Agen-*

cy v. Aegean Const. Servs., Inc.*, 755 N.E.2d 237, 241 (Ind.Ct.App.2001). As recognized by the trial court, to the extent that Chase did in fact disburse funds belonging to McComb, McComb may have a viable breach of contract claim arising from its *own* contract with Chase; in fact, Chase notes in its brief on appeal that McComb's counterclaims against Chase are still pending in the trial court. However, this does not answer the question of whether McComb has standing to complain of a breach of *Indian Village's* contract with Chase, that is, to challenge Chase's foreclosure action against Indian Village.

they do not have standing to challenge the foreclosure proceeding, it erred in prioritizing the liens of the parties. They concede that Chase has priority with regard to the land and the buildings, but they contend that their mechanic's liens have priority as to the improvements they provided. Resolution of this issue turns on the interplay between three statutes relating to the priority of liens: Indiana Code subsection 32–21–4–1(b), Indiana Code section 32–28–3–2, and Indiana Code subsection 32–28–3–5(d). Interpretation of a statute is purely a question of law, and we review the trial court's decision *de novo*. *Crum*, 812 N.E.2d at 166. The primary goal in interpreting the meaning of a statute is to determine and effectuate legislative intent. *Id.*

The first statute relevant to this dispute is Indiana Code subsection 32–21–4–1(b), which provides, in pertinent part, that "[a] conveyance, mortgage, or lease takes priority according to the time of its filing." Relying on this statute, we have said that a mortgage lien is superior to a mechanic's lien "if the mortgage was recorded before the mechanic's work was begun or materials furnished." *Provident Bank v. Tri-County Southside Asphalt, Inc.*, 804 N.E.2d 161, 163 (Ind.Ct.App.2004), *aff'd on reh'g*, 806 N.E.2d 802 (Ind.Ct.App.2004), *trans. denied*.

However, we also have Indiana Code section 32–28–3–2, which provides:

(a) The entire land upon which the building, erection, or other improvement is situated, including the part of the land not occupied by the building, erection, or improvement, is subject to a lien to the extent of the right, title, and interest of the owner for whose immediate use or benefit the labor was done or material furnished.

(b) If:

 (1) the owner has only a leasehold interest; or

 (2) the land is encumbered by mortgage;

the lien, so far as concerns the buildings erected by the lienholder, is not impaired by forfeiture of the lease for rent or foreclosure of mortgage. The buildings may be sold to satisfy the lien and may be removed not later than ninety (90) days after the sale by the purchaser.

We have said that "[t]he plain language of this statute protects the mechanic lien holder inasmuch as it protects his priority as to the improvement for which he provided the labor and materials." *Provident Bank*, 804 N.E.2d at 164. "The statute contemplates that the holder of a mechanic lien may sell the improvements to satisfy the lien and remove them within ninety days of the sale date." *Id.* This statute, as written and as applied by this court, seems to favor the mechanic's lienholder with regard to new improvements even if the mortgage is recorded before the mechanic's lien is recorded and before the mechanic's lienholder begins its work or furnishes any materials.

Finally, we have Indiana Code subsection 32–28–3–5(d), which provides that, as to commercial property (including commercial residential property, *e.g.*, apartment complexes), "[t]he mortgage of a lender has priority over all liens created under this chapter that are recorded after the date the mortgage was recorded, to the extent of the funds actually owed to the lender for the specific project to which the lien rights relate."[4] The first clause

---

4. We say that subsection (d) applies only to "commercial property" because the provision includes the following limitation:

This subsection does not apply to a lien that relates to a construction contract for the

of subsection (d)—"The mortgage of a lender has priority over all liens created under this chapter that are recorded after the date the mortgage was recorded"—appears to give priority to the mortgage of a lender as long as it is recorded first, in contrast to Indiana Code section 32–28–3–2, which, as noted above, seems to favor the mechanic's lienholder with regard to new improvements even if the mortgage is recorded before the effective date of the mechanic's lien.

On appeal, the Lienholders acknowledge the lender-friendly language of Indiana Code subsection 32–28–3–5(d) but argue that Indiana Code section 32–28–3–2 creates an exception in favor of mechanic's lienholders regarding new improvements on real estate—in this case, the improvements the Lienholders provided to the apartment complex. Chase argues almost exactly the opposite: that regardless of the intent of Indiana Code section 32–28–3–2, Indiana Code subsection 32–28–3–5(d) gives absolute priority to earlier-recorded mortgages over later-recorded mechanic's liens on commercial property—in this case,

the apartment complex. We conclude that neither position is accurate.

Chase is correct that the decisive language in this case comes from Indiana Code subsection 32–28–3–5(d). However, Chase goes too far when it asserts that the provision gives *absolute* priority to earlier-recorded mortgages over later-recorded mechanic's liens on commercial property. Rather, under subsection (d), the mortgage of a lender has priority *only* "to the extent of the funds actually owed to the lender for the specific project to which the lien rights relate." I.C. § 32–28–3–5(d). To understand the meaning of this clause, it is helpful to examine its history.

The seminal case on Indiana's mechanic's lien statutes is *Ward v. Yarnelle*, 173 Ind. 535, 91 N.E. 7 (1910), *overruled in part on other grounds by Moore–Mansfield Constr. Co. v. Indianapolis, N.C. & T. Ry. Co.*, 179 Ind. 356, 101 N.E. 296 (1913). In *Ward*, our supreme court was asked to determine the priority between a mortgage executed to raise funds for construction of improvements and the mechanic's liens of those who provided the

development, construction, alteration, or repair of the following:
(1) A Class 2 structure (as defined in IC 22–12–1–5).
(2) An improvement on the same real estate auxiliary to a Class 2 structure (as defined in IC 22–12–1–5).
(3) Property that is:
(A) owned, operated, managed, or controlled by:
 (i) a public utility (as defined in IC 8–1–2–1);
 (ii) a municipally owned utility (as defined in IC 8–1–2–1);
 (iii) a joint agency (as defined in IC 8–1–2.2–2);
 (iv) a rural electric membership corporation formed under IC 8–1–13–4;
 (v) a rural telephone cooperative corporation formed under IC 8–1–17; or
 (vi) a not-for-profit utility (as defined in I.C. § 8–1–2–125); regulated under IC 8; and

(B) intended to be used and useful for the production, transmission, delivery, or furnishing of heat, light, water, telecommunications services, or power to the public. In short, subsection (d) does not apply to a construction contract for a "Class 2 structure," which is defined as "[a] building or structure that is intended to contain or contains only one (1) dwelling unit or two (2) dwelling units" or an outbuilding for such a building or structure, "such as a garage, barn, or family swimming pool." I.C. § 22–12–1–5. Subsection (d) also does not apply to a construction contract for an improvement on the same real estate auxiliary to a Class 2 structure or for property intended to be used to deliver public utilities or telecommunications services. As such, subsection (d) applies only to commercial property (including commercial residential property, *e.g.*, apartment complexes).

labor and supplies necessary to complete the construction. At the time, the predecessor to Indiana Code section 32–28–3–2 was basically identical to the current provision:

The entire land upon which any such building, erection or other improvement is situated, including that portion not covered therewith, shall be subject to lien to the extent of all the right, title and interest owned therein by the owner thereof, for whose immediate use or benefit such labor was done or material furnished; and where the owner has only a leasehold interest, or the land is encumbered by mortgage, the lien, so far as concerns the buildings erected by the lien-holder, is not impaired by forfeiture of the lease for rent or foreclosure of mortgage; but the same may be sold to satisfy the lien and removed within ninety days after the sale by the purchaser.

Burns' Annotated Indiana Statutes § 8296 (Bobbs–Merrill 1908). However, the predecessor to Indiana Code section 32–28–3–5 did not include anything resembling subsection (d). It provided:

The recorder shall record the notice, when presented, in the miscellaneous record book, for which he shall receive twenty-five cents; and all liens so created shall relate to the time when the mechanic or other person began to perform the labor or furnish the materials or machinery, and shall have priority over all liens suffered or created thereafter, except the liens of other mechanics and material-men, as to which there shall be no priority.

Burns' Annotated Indiana Statutes § 8298 (Bobbs–Merrill 1908). Our supreme court concluded that the statutes as they existed contemplated four different scenarios regarding priority and provided the priority for each such scenario:

They may be stated, first, as cases where there is no building on the land when the improvement begins, and the land is unincumbered, and so remains. There the liens attach to both realty and the improvement, without distinction or priority among the materialmen or laborers. Second, cases where there is no building, but there is a leasehold or the land encumbered. There the existing incumbrances take priority on the land, and the materialman and labor claimant equally upon the building or improvement. Third, where some labor is performed, or material is furnished prior to the execution of a mortgage, in which event, upon notice being filed within the statutory period, though after the mortgage is given, the lien reaches back of the mortgage to the time when the work is begun or the material furnished, and gains priority both as to the land and the building. Fourth, where the improvement is made after the mortgage is executed, but under a prior contract for the improvement, but no work is done or material furnished until after the mortgage is executed or where the work is all done, and material furnished under the contract later than the mortgage becoming effective as a lien, in which case priority is given on the building alone.

*Ward*, 91 N.E. at 13–14.

Nonetheless, the *Ward* court also found that the statutes failed to address the situation presented in its case, that is, the lien priority between a mortgage executed to raise funds for construction of improvements on property and the mechanic's liens of those who provided the labor and supplies necessary to complete the construction. *Id.* at 15–16. Lacking a statutory solution, the court concluded that, as the mortgagee and the mechanic's lien-holders were engaged in a common enterprise of improving the property and that

completion of the improvement by the laborers and suppliers was necessary to protect the mortgagee's interest, their equities were equal. *Id.* at 15. In 1990, the Bankruptcy Court for the Northern District of Indiana also acknowledged the statutory gap identified by our supreme court in *Ward. See In re Venture Properties, Inc.,* 139 B.R. 890, 895 (Bankr. N.D.Ind.1990).

In 1999, our legislature adopted what is now Indiana Code subsection 32–28–3–5(d), which, again, provides, in pertinent part: "The mortgage of a lender has priority over all liens created under this chapter that are recorded after the date the mortgage was recorded, to the extent of the funds actually owed to the lender for the specific project to which the lien rights relate." P.L. 53–1999, § 3. The only written opinion of this court to have addressed subsection (d) since its enactment is Judge Sharpnack's dissent in *Provident Bank,* 804 N.E.2d 161. The *Provident Bank* majority did not analyze subsection (d), and Judge Sharpnack ultimately concluded that the provision did not apply to the circumstances presented in that case. Nonetheless, we find Judge Sharpnack's discussion of the provision to be not only helpful but also correct.

Judge Sharpnack, after analyzing our supreme court's opinion in *Ward* and the Northern District Bankruptcy Court's decision in *Venture Properties,* opined that our legislature intended for Indiana Code subsection 32–28–3–5(d) to fill the statutory gap identified by our supreme court in *Ward. Provident Bank,* 804 N.E.2d at 168 (Sharpnack, J., dissenting). That is, whereas the statutes in existence when *Ward* was decided failed to address the lien priority between a mortgage executed to raise funds for construction of improvements on property and the mechanic's liens of those who provided the labor and supplies necessary to complete the construction, our legislature adopted Indiana Code subsection 32–28–3–5(d) to establish that where the "funds from the loan secured by the mortgage are for the project which gave rise to the mechanic's lien ... the mortgage lien has priority over mechanic's liens recorded after the mortgage." *Id.* at 169 (Sharpnack, J., dissenting).

 This reading of Indiana Code subsection 32–28–3–5(d) is consistent with the principle that "[w]hen two statutes cover the same subject and one does so in general terms while the other does in specific terms, the more specific statute prevails and shall be applied." *Lockard v. Miles,* 882 N.E.2d 288, 290 (Ind.Ct.App.2008). With regard to priority over improvements, Indiana Code section 32–28–3–2 provides the general rule. As stated in *Provident Bank,* 804 N.E.2d at 164, the plain language of that statute "protects the mechanic lien holder inasmuch as it protects his priority as to the improvement for which he provided the labor and materials." On the other hand, Indiana Code subsection 32–28–3–5(d) provides the more specific rule with regard to priority over improvements on commercial property where the funds from the loan secured by the mortgage are intended to finance those improvements and where the mortgage is recorded before the mechanic's liens. Finding Judge Sharpnack's reading of Indiana Code subsection 32–28–3–5(d) to be a reasonable one, we explicitly hold today what has previously been stated only in *dicta* in a dissenting opinion: With regard to commercial property, where the funds from the loan secured by the mortgage are for the specific project that gave rise to the mechanic's lien, the mortgage lien has priority over the mechanic's lien recorded after the mortgage.

Applying this rule to the facts before us, there is no dispute that Chase's mortgages were recorded before the Lienholders' mechanic's liens or that the property in question is commercial in nature. In addition, the trial court, in granting Chase's motion for partial summary judgment, concluded that the funds from Chase's loan were for the specific project that gave rise to the Lienholders' mechanic's liens. The Lienholders do not challenge this conclusion on appeal.[5] Instead, they rely on their argument that Indiana Code section 32–28–3–2 constitutes an exception to Indiana Code subsection 32–28–3–5(d), a contention that, as discussed above, is not supported by the historical development and judicial interpretation of those statutes. Under these circumstances, the trial court was correct that Indiana Code subsection 32–28–3–5(d) controls and that Chase's mortgages have priority over the mechanic's liens.

The Lienholders' reliance upon *Provident Bank* is misplaced. There, we held that a mechanic's lienholder had priority with regard to the improvement it provided. *Provident Bank*, 804 N.E.2d at 164–65. In that case, however, there was no indication that the funds from the loan secured by the mortgage were for the construction of the improvement. *Id.* at 169 n. 3 (Sharpnack, J., dissenting). Therefore, Indiana Code subsection 32–28–3–5(d) did not apply. *Id.* As discussed above, subsection (d) does apply in this

case, and the trial court properly so concluded. That is not to say, as the Lienholders contend, that our reading of Indiana Code subsection 32–28–3–5(d) renders Indiana Code section 32–28–3–2 meaningless. As seen in *Provident Bank*, Indiana Code section 32–28–3–2 still provides the general rule.

Finally, we note the Lienholders' request that the trial court's Decree be amended so that it expressly provides that "the mechanic's liens of McComb and ARI are not foreclosed and extinguished, but continue unimpaired by the foreclosure of Chase's mortgages" and that "McComb and ARI are entitled to foreclosure of their liens following the sheriff's sale on Chase's foreclosed mortgage." (McComb's Br. p. 23; *see also* ARI's Br. p. 8).[6] We find such an amendment to be unnecessary in light of the trial court's clarification in its order denying the Lienholders' motions to correct error:

> [Paragraphs 6 and 7] of the Decree should be read together so as to give Chase priority as to proceeds from the sale of the property, but in the event that the sale of the mortgaged premises brings a price that is greater than the amount due and owing to Chase, any surplus proceeds are to be deposited with the Clerk of the Court and to be held until the Court can determine the priority issues that may exist between the junior lien holders.

**5.** McComb apparently argued to the trial court that the $175,000 used for the purchase of 3007 Engle Road were not for the "specific project" to which the mechanic's liens related pursuant to Indiana Code subsection 32–28–3–5(d) and therefore were not subject to Chase's priority under that provision. (Appellants' App. p. 49). However, the Lienholders have not renewed that argument on appeal. In fact, even though the trial court relied upon Indiana Code subsection 32–28–3–5(d) in finding for Chase, McComb and ARI do not

even mention that provision in their opening briefs.

**6.** At this point, it is worth mentioning that McComb and ARI's arguments regarding priority are substantially similar. We recognize that they are independent parties, but their interests are virtually identical; trees, client funds, and judicial resources could have been conserved if they would have filed a joint brief on the issue (as they did with their joint appendix) instead of two largely duplicative briefs.

(Appellants' App. p. 64). Unfortunately for the Lienholders, this declaration by the trial court provides no practical benefit given that the amount of Chase's mortgage lien exceeded the funds garnered by the sheriff's sale.

## CONCLUSION

Based on the foregoing, we conclude that the trial court did not err in finding that McComb lacks standing to challenge Chase's mortgage foreclosure action or in prioritizing the respective liens. Therefore, we affirm the trial court's grant of Chase's motion for partial summary judgment.

Affirmed.

BAKER, C.J., and ROBB, J., concur.