

**FILED**

Jun 26 2015, 7:53 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT

Carl A. Greci
D. Lucetta Pope
Ryan G. Milligan
Faegre Baker Daniels LLP
South Bend, Indiana

ATTORNEY FOR APPELLEE

Patrick A. Mysliwy
Maish & Mysliwy, Attorneys at Law
Hammond, Indiana

IN THE

# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Wells Fargo Bank, N.A., | June 26, 2015 |
| *Appellant,* | Court of Appeals Case No. 45A03-1410-PL-381 |
| v. | Appeal from the Lake Superior Court. |
| Rieth-Riley Construction Co., Inc.; Woodmar Hammond, LLC; The Bon-Ton Department Stores, Inc.; Build Tech, Inc.; Ziese & Sons Excavating, Inc.; Advanced Awning & Sign, Inc.; A-Z Construction Layout, LLC; Coex, Inc.; Terrance K. Holt; City of Hammond Redevelopment Commission, | The Honorable John R. Pera, Judge. Cause No. 45D10-1302-PL-7 Consolidated with 45D04-1302-PL-27 |
| *Appellees* | |

**Baker, Judge.**

This case requires us to determine the remedy available to a mechanic's lienholder when the property on which the lien is held is subject to a mortgage foreclosure action. Wells Fargo Bank, N.A. (Wells Fargo), sought to foreclose a mortgage lien that it holds over certain real property. Rieth-Riley Construction Company, Inc. (Rieth-Riley), holds a mechanic's lien over the same property. The trial court entered judgment in favor of Wells Fargo, ordering its mortgage lien foreclosed and the property sold. The trial court further held that Wells Fargo could use its judgment to bid for the property at sheriff's sale, but only after depositing a certain amount of its bid in cash. This would ensure that there was cash to distribute if the trial court later found that Rieth-Riley was entitled to some recovery by virtue of its mechanic's lien. Finding that the trial court erred on this point, we reverse.

# Facts

Woodmar Hammond LLC (Woodmar) is the fee simple titleholder of Lot 1 of the Woodmar Shopping Center in Hammond. In August 2007, Wells Fargo loaned Woodmar $6,200,000 to refinance its purchase of Lot 1. Woodmar executed and delivered to Wells Fargo a promissory note with a maturity date of April 30, 2011, promising to repay the principal plus interest. To secure the debt, Woodmar also executed and delivered to Wells Fargo a first mortgage lien on all of its rights to Lot 1. Wells Fargo recorded this mortgage in the

Office of the Lake County Recorder in January 2008. On April 30, 2011, Woodmar defaulted by failing to pay the principal balance on the matured loan.

[3] In November 2011, Woodmar hired Rieth-Riley to provide paving services for parking lot improvements on Lot 1. In November and December 2011, Rieth-Riley performed the work as agreed but never received payment from Woodmar. In February 2012, Rieth-Riley executed and recorded a mechanic's lien against Lot 1 for the principal amount of $251,800 plus interest and attorney fees. On February 4, 2013, still having not received payment, Rieth-Riley filed a complaint in the trial court claiming breach of contract against Woodmar and seeking to foreclose its mechanic's lien against Lot 1. Rieth-Riley named Wells Fargo as a defendant due to its interest in Lot 1, but claimed that its mechanic's lien had priority over Wells Fargo's mortgage lien.

[4] Wells Fargo filed a cross-claim, counterclaims, and a third-party complaint on April 17, 2013. Wells Fargo asserted that its mortgage lien had priority over Rieth-Riley's mechanic's lien, as well as any other lien,[1] because of its earlier recording date. On June 21, 2013, Wells Fargo moved for summary judgment, asking the trial court to enter judgment against Woodmar for $5,229,052 plus interest and attorney fees and order foreclosure of its mortgage lien. Rieth-Riley filed a cross-motion for summary judgment asking the trial court to enter

---

[1] A-Z Construction Layout, LLC, Coex, Inc., and Ziese and Sons Excavating, Inc., also filed cross-motions for summary judgment seeking foreclosure of mechanic's liens on the property. These motions were denied as the trial court found that there was dispute over whether the improvements made by these companies were made to Lot 1 or to Lot 3 of the Woodmar Shopping Center. Appellant's App. p. 50.

judgment against Woodmar for $345,299.60 plus interest and attorney fees and order foreclosure of its mechanic's lien, which it again argued had priority.

[5] On May 8, 2014, the trial court granted Wells Fargo's motion for summary judgment and denied Rieth-Riley's cross-motion for summary judgment. As to the priority of the liens, the trial court found:

> Here, the law provides that Rieth-Riley . . . shall have priority as to the actual improvements that [it has] made to Lot 1. Further, under Ind. Code § 32-28-3-2, this Court notes that the Mechanic's Lien holders could have sold and removed their improvements. However, that is not to say that the mechanic's liens have priority over Wells Fargo's mortgage lien. Rather, the law on this point is clear. Rieth-Riley . . . shall be entitled to commence foreclosure proceedings and recover the value of [its lien] and the attorney fees provided for in our mechanic's lien statute only after the Wells Fargo mortgage is satisfied. Furthermore, Rieth-Riley . . . [is] entitled to priority as to any proceeds from the sale of the improvements that [it] made. It follows that, upon making a showing of having a valid mechanic's lien for improvements made to Lot 1, any recovery from the Wells Fargo foreclosure proceedings shall be reduced by the proceeds from the sale of the improvements and set aside for the mechanics liens holders. Such matter shall be resolved by further order of this Court.

Appellant's App. p. 52-53 (citations omitted). The trial court then ordered Lot 1 sold to satisfy Wells Fargo's judgment. It noted that:

> The proceeds of the sale of the Property shall be applied in the following order: (i) first, to the payment of costs of the Sheriff's Sale; (ii) second, to the payment of all real estate taxes then owing to the Treasurer of Lake County, Indiana, for the Property, (iii) third, all remaining proceeds shall be deposited with the Lake County Superior Court and (iv) all deposited proceeds will then be distributed to Wells Fargo and the junior lienholders in a manner that will be determined by a further order of this Court.

*Id.* at 54.  Finally, the trial court noted that "Wells Fargo is hereby empowered to bid for the Property with the Judgment amount to be credited with the amount bid by Wells Fargo." *Id.*

[6]  On June 6, 2014, Rieth-Riley filed a motion to clarify and/or correct error.  In its motion, Rieth-Riley argued that by allowing Wells Fargo to "credit bid" for Lot 1 at the sheriff's sale, the trial court's order would deprive Rieth-Riley of any recovery because there would likely be no cash in the pot to distribute following the sale.  Wells Fargo filed a motion in opposition.

[7]  On October 3, 2014, the trial court amended its previous order and granted summary judgment in favor of Rieth-Riley on its breach of contract claim against Woodmar, awarding it $337,370 plus interest.  The trial court reaffirmed that Wells Fargo's mortgage lien  was "superior to all interests asserted against such property by any other party excepting only: . . . the interests of Rieth-Riley as a mechanic lien holder in the improvements that it may subsequently be determined by this Court in these proceedings to have constructed on Woodmar Center Lot 1." *Id.* at 83.  The trial court then ordered Wells Fargo to deposit with the trial court the first $337,000 of any bid it may make to purchase Lot 1 in cash.  This would assure Rieth-Riley a recovery were the trial court to later determine that it is entitled to proceeds from the sale relating to any improvements it made on the property.  The trial court determined that there was no just reason for delay and directed the entry of a

final judgment on this claim pursuant to Indiana Trial Rule 54(B).[2] Wells Fargo now appeals.

# Discussion and Decision

[8] When reviewing a trial court's decision on a motion for summary judgment "we face the same issues that were before the trial court and follow the same process." *Pedraza v. City of East Chicago*, 746 N.E.2d 94, 99 (Ind. Ct. App. 2001). The trial court's order is cloaked with the presumption of validity and it is the appellant's burden to persuade us that its decision was erroneous. *Id.* Here, there is no dispute as to any material fact; rather, the trial court's interpretation of a statute is at issue. We review matters of statutory interpretation de novo because they present pure questions of law. *Alexander v. PSB Lending Corp.*, 800 N.E.2d 984, 989 (Ind. Ct. App. 2003).

# I. The Trial Court's Order

[9] Rieth-Riley first argues that the trial court's order "makes no specific division or allocation of anticipated sale proceeds, except for payment of sales expenses and outstanding property taxes." Appellee's Br. p. 10. Simply put, as the trial court has only ordered Wells Fargo to deposit cash, and has yet to allocate any

---

[2] Wells Fargo does not believe that the trial court's order is a final appealable order "because it reserves for further determination the dollar value of Rieth-Riley's priority to foreclosure proceeds." Appellant's Br. p. 4. n. 3. Accordingly, Wells Fargo filed a motion with this Court to accept jurisdiction of interlocutory appeal. This Court denied the motion, concluding that "the order appears to be otherwise appealable as a matter of right under Appellate Rule 14(A)(1) and (4)." Nov. 24, 2014 Order under Cause No. 45A03-1410-PL-379.

of that cash to Rieth-Riley, Rieth-Riley believes that Wells Fargo has nothing to appeal at this point.

[10] We disagree. We have long held that an "execution creditor," as Wells Fargo will be known in this case, may use its judgment against the mortgagor as a credit toward the purchase price of the mortgagor's property at sheriff's sale. We have observed that:

> It is the payment of the purchase money which completes the sale. Where the execution creditor purchases, it is held that his receipt is sufficient without the actual payment of the purchase price by him to the sheriff, for the reason that to require him to pay over the money to the sheriff, immediately thereafter receiving it back from the sheriff, would be an idle form.

*Fuller v. Exch. Bank*, 38 Ind. App. 570, 78 N.E. 206, 206-07 (1906).

[11] By ordering Wells Fargo to deposit a certain amount of its bid in cash, the trial court ordered Wells Fargo to do something other than that which it was otherwise entitled to do—bid with its judgment alone. Simply put, the trial court's disposition of this matter affects Wells Fargo's rights. As the trial court directed entry of final judgment on this matter pursuant to Trial Rule 54(B), Wells Fargo is entitled to appeal this judgment and we are obliged to determine whether the trial court erred.

## II. Priority of Mortgage and Mechanic's Liens

[12] Indiana Code section 32-21-4-1(b) governs the priority of encumbrances on land. It provides that "[a] conveyance, mortgage, memorandum of lease, or

lease takes priority according to the time of its filing." I.C. § 32-21-4-1(b). Wells Fargo recorded its mortgage in January 2008.

[13] Rieth-Riley recorded its mechanic's lien in February 2012. However, Indiana Code section 32-28-3-5 provides that, in the case of mechanic's liens, "[t]he recorded lien relates back to the date the mechanic or other person began to perform the labor or furnish the materials or machinery." Rieth-Riley began paving the parking lot in November 2011. This was still almost four years after Wells Fargo recorded its mortgage.

[14] Indiana Courts have long held that "a mortgage lien was superior to a mechanic's lien if the mortgage was recorded before the mechanic's work was begun or materials furnished." *Provident Bank v. Tri-County Southside Asphalt, Inc.*, 804 N.E.2d 161, 163 (Ind. Ct. App. 2004), *clarified on reh'g*, 806 N.E.2d 802 (Ind. Ct. App. 2004) (citing *Zehner v. Johnson*, 22 Ind. App. 452, 53 N.E. 1080, 1082 (1899)). Thus, by virtue of its earlier recording date, Wells Fargo's mortgage has priority over Rieth-Riley's mechanic's lien.

## III. Mechanic's Lien Statute

[15] Rieth-Riley recorded its mechanic's lien pursuant to Indiana Code section 32-28-3-1, which allows "[a] contractor, a subcontractor, a mechanic . . . or any other person performing labor or furnishing materials or machinery" for "the construction, alteration, repair, or removal" of various structures to obtain a lien on that structure and the land on which it sits "to the extent of the value of any labor done or the material furnished, or both[.]"

[16]    The statute further provides:

>   (a)    The entire land upon which the building, erection, or other improvement is situated, including the part of the land not occupied by the building, erection, or improvement, is subject to the lien to the extent of the right, title, and interest of the owner for whose immediate use or benefit the labor was done or material furnished.

>   (b)    If:

>>      (1)     the owner has only a leasehold interest; or

>>      (2)     the land is encumbered by mortgage;

>   the lien, so far as concerns the buildings erected by the lienholder, is not impaired by the forfeiture of the lease for rent or foreclosure of mortgage. The buildings may be sold to satisfy the lien and may be removed not later than ninety (90) days after the sale by the purchaser.

I.C. § 32-28-3-2.

[17]    In *Provident Bank v. Tri-County Southside Asphalt, Inc.*, we held that this statute "protects the mechanic lien holder inasmuch as it protects his priority as to the improvement for which he provided the labor and materials." 804 N.E.2d at 164. "The statute contemplates that the holder of a mechanic lien may sell the improvements to satisfy the lien and remove them within ninety days of the sale date." *Id.* This Court has noted that the "the statute, as written and as applied by this court, seems to favor the mechanic's lienholder with regard to new improvements even if the mortgage is recorded before the mechanic's lien is recorded and before the mechanic's lienholder begins its work or furnishes any materials." *Harold McComb & Son, Inc. v. JPMorgan Chase Bank, NA*, 892 N.E.2d 1255, 1259 (Ind. Ct. App. 2008).

[18] In *Provident Bank*, Tri-County had paved a driveway on property over which Provident held a prior-recorded mortgage. *Provident Bank*, 804 N.E.2d at 162. Tri-County recorded a mechanic's lien and filed a complaint to foreclose the lien after the owner of the property failed to pay. *Id.* This Court held that "Tri-County has priority as to the improvements: the driveway. Thus, under Indiana Code section 32-28-3-2(b), Tri-County could have sold and removed the driveway." *Id.* at 164. Thus, while the mechanic's lien statute gave Tri-County priority as to its improvement, it also limited Tri-County's ability to assert this priority, allowing Tri-County to remove the improvement if it so chose.

[19] In so holding, we acknowledged the practical difficulty of removing a driveway, but noted that this result effected the purpose behind both the mechanic's lien and lien priority statutes. *Id.* at 165 (discussing I.C. § 32-28-3-2(b); I.C. § 32-21-4-1(b)). We also observed that public policy "places the risk of loss on he who is best able to avoid that loss" and that a mechanic performing work on property encumbered by a mortgage "may easily determine whether the property upon which he will work is encumbered" before deciding whether to perform the work. *Id.* at 165-66.

[20] Judge Sharpnack dissented in *Provident Bank*, arguing that the impracticality of removing the driveway effectively forced the mechanic's lienholder to "forfeit its priority as to the improvement created by its efforts." *Id.* at 170 (Sharpnack, J., dissenting). Judge Sharpnack thought the better course of action would have

been to give Tri-County priority as to the proceeds from the sale of the property up to the amount of its mechanic's lien. *Id.*

[21] Thus, applying the *Provident Bank* majority's analysis to the facts of the case, Rieth-Riley could assert its priority by removing and selling the parking lot. It could then satisfy the remainder of its judgment from the proceeds that remained from the sale of Lot 1 after Wells Fargo's judgment is satisfied. Here, however, the trial court appears to have adopted the dissent's position. In ordering Wells Fargo to put the first $337,000 of its bid down in cash, the trial court anticipates that there will be some form of pro-rata apportionment of the proceeds from the sale of Lot 1.

[22] However reasonable the trial court's decision may seem, it does not find support in the text of our mechanic's lien statute. Unlike similar statutes in other states, Indiana Code section 32-28-3-2(b) does not contemplate pro-rata apportionment of proceeds from a sheriff's sale should a mechanic seek to foreclose its lien against property encumbered by a prior-recorded mortgage.[3] Rather, the statute provides that the mechanic's lienholder may remove and sell the improvements to satisfy the lien. I.C. § 32-28-3-2(b). Despite the practical difficulties inherent in taking this course of action, we have previously held that

---

[3] For instance, Illinois's mechanic's lien statute does provide for such apportionment. *See* 770 ILCS 60/16 (providing that "upon any questions arising between incumbrancers and lien creditors, all previous incumbrances shall be preferred only to the extent of the value of the land at the time of making of the contract for improvements, . . . *and the court shall ascertain by jury or otherwise, as the case may require, what proportion of the proceeds of any sale shall be paid to the several parties in interest*.") (emphasis added).

this is the remedy that our mechanic's lien statute provides in such situations. *Provident Bank*, 804 N.E.2d at 164-65.

[23] Thus, Rieth-Riley has priority as to any improvements it made to Lot 1 and it may assert this priority to the extent that it is able to remove and sell these improvements. I.C. § 32-28-3-2(b). Rieth-Riley is not, however, entitled to a pro-rata share of the proceeds from the sale of Lot 1. As Wells Fargo's mortgage lien has priority, Rieth-Riley can share in proceeds from the sale only after Wells Fargo's judgment has been satisfied. As noted by the trial court, these proceeds are to be reduced by the amount, if any, that Rieth-Riley recovers from the sale of the parking lot.

## IV. Removal of the "Buildings"

[24] We anticipate that it will be difficult for Rieth-Riley to remove and sell the parking lot. However, in its brief, Rieth-Riley points out that removal and sale is possible, noting that "[t]he asphalt of the parking lot could be sold and physically reclaimed from Woodmar Lot 1." Appellee's Br. p. 10 n. 2. Wells Fargo, however, asks us to hold that Rieth-Riley may not remove the parking lot.

[25] Wells Fargo points to the plain language of the statute, which provides that in situations such as this, "the lien, so far as concerns the *buildings* erected by the lienholder, is not impaired by the forfeiture of the lease for rent or foreclosure of mortgage" and that "[t]he *buildings* may be sold to satisfy the lien." I.C. 32-28-3-2(b) (emphases added). Wells Fargo argues that Rieth-Riley's parking lot is not

a "building" and maintains that any removal of the parking lot is not authorized by statute.

[26] We are mindful that "when a court is called upon to construe words in a single section of a statute, it must construe them with due regard for all other sections of the act and with regard for the legislative intent to carry out the spirit and purpose of the act." *Preferred Prof'l Ins. Co. v. West*, 23 N.E.3d 716, 730 (Ind. Ct. App. 2014), *trans. denied*. "A legislative purpose, shown by the context of a statute, should not be defeated by mere blind adherence to definitions of words found in dictionaries, however reputable." *Chicago & E.I.R. Co. v. Pub. Serv. Comm'n of Ind.*, 185 Ind. 678, 114 N.E. 414, 415 (1916).

[27] We first note that not much can be gleaned as to the meaning of "building" from its use in the statute itself. The statute does not define the word, nor is it used throughout the statute in a manner that clearly distinguishes it from other words. For instance, the statute provides that a mechanic may have a lien "upon the house, mill, manufactory, *or other building*, reservoir, system of waterworks, *or other structure*." I.C. § 32-28-3-1(b)(1) (emphases added). Thus, the language used here seems to distinguish "building" and "structure." However, the next subdivision provides that a mechanic may have a lien on the parcel of land "on which the *structure or improvement* stands." I.C. § 32-28-3-1(b)(2). This is the first mention of the word "improvement," and there is no mention of the land on which a "building" stands.

[28] However, it is clear from the next section of the statute that the phrase "structure or improvement" must include "buildings" as well. I.C. § 32-28-3-2(a). This section also introduces a new phrase, providing that a mechanic may have a lien on the entirety of an owner's interest in the land upon which a "building, erection, or other improvement" stands. *Id.* The statute has substituted the word "erection" for "structure" but there is no indication as to whether a difference in meaning is intended.

[29] Finally, we arrive at the subsection of interest to Wells Fargo, which drops all terms except for "building," and provides that "the lien, so far as concerns the *buildings* erected by the lienholder, is not impaired by . . . foreclosure of mortgage. The *buildings* may be sold to satisfy the lien . . . ." I.C. § 32-28-3-2(b) (emphases added). However, we cannot honestly say whether this subsection truly means to exclude "structures," "erections," and/or "improvements." Up to this point the statute has treated these words almost interchangeably, and we cannot attribute an unambiguous meaning to any one of them based on its use in the statute itself.

[30] We next look to dictionaries to ascertain the plain and ordinary meaning of "building." Wells Fargo prefers the following definition—"[a] structure with walls and a roof, esp. a permanent structure." Black's Law Dictionary (10th ed. 2014). However, this modern definition of "building," from the most recent edition of Black's Law Dictionary, sheds little light on what is meant by the

term in context of a statute whose text has gone largely unchanged since 1883.[4] We note that this very same dictionary defined "building" quite differently around the time of the statute's passage, defining it as "[a] structure or edifice erected by the hand of man, composed of natural materials, as stone or wood, and intended for use or conveniences." Black's Law Dictionary 157 (1st ed. 1891). Another dictionary from around that time, referring to "building" in its legal sense, noted that "a pole fixed in the earth is not a building, but a fence or wall is." *Century Dictionary and Cyclopedia* 712 (1913). These definitions make no mention of a structure composed of walls and a roof.

[31] In light of the ambiguity of its language, and the fact that it was written well over a century ago, it appears that our mechanic's lien statute is not an appropriate candidate for a technical parsing of words. However, the statute must be read in light of legislative purpose, and this we do know. We have long observed that the mechanic's lien statute is meant to "intervene in favor of the mechanic or laborer, and secure to him a return for what he has done in enhancement of the value of the land, and still not injure prior lienholders." *Ward v. Yarnelle*, 173 Ind. 535, 91 N.E. 7, 14 (1910).

[32] With this in mind, we do not believe that the legislature intended us to engage in debate about whether the work of a mechanic constitutes a "building," rather

---

[4] Ind. Laws 1883, ch. CXV, § 2 at 140, as amended, Ind. Laws 1889, ch. CXXIII § 2 at 257 (". . . the lien, so far as concerns the buildings erected by said lien-holder, is not impaired by forfeiture of the lease for rent or foreclosure of the mortgage; but the same shall be sold to satisfy the lien and be removed within 90 days after the sale by the purchaser.") See *Mechanics Liens in Indiana—The Extent of the Property and Property Interests Subject to the Lien*, 36 IND. L.J. 526, 526-29 (1961), for a general discussion of the history of the statute.

than a "structure," "erection," or "improvement."[5]  Furthermore, we have previously held that the statute allowed for the removal of an asphalt driveway—a structure (or building) nearly identical to the parking lot at issue here.  *Provident Bank*, 804 N.E.2d at 166.  In *Provident Bank*, it was the fact that the driveway could be removed that led us to hold that the mechanic's lien statute allowed for its removal.  *Id.* at 165.

[33]  Our Supreme Court has placed a similar focus on removability in determining whether creditor mechanics should be allowed to remove their improvements from property subject to a mortgage foreclosure.  *Ward*, 91 N.E. at 14.  In *Ward*, a mortgage was foreclosed on a theater and several mechanics who had made improvements to the theater, some without filing liens, wished to remove their improvements.  Speaking of the mechanics who installed the theater's elevator and scenery, the Court noted if "any of them can be removed without injury to the building their removal should be permitted."  *Id.* at 16.

[34]  The Court explained what it meant by "injury to the building":

> If they [the improvements] can be removed without injury to the
> building—that is, have not become such a part of it as that their
> removal would injure the building—they [the mechanics] should have
> the right of removal if they so elect; but if the property has so far
> become a part of the building, as that its removal would injure the

[5] Wells Fargo posits that the legislature may have intended a distinction because "buildings" "tend to be more saleable" in that they are more easily removable than some of the other things enumerated in the mechanics lien statute, such as sidewalks, wells, and ditches.  Appellant's App. p. 21.  While Wells Fargo may be correct that there exist some things covered by the mechanic's lien statute that are simply too difficult or impossible to remove, we do not see how a "building"—which Wells Fargo conceives of as a structure with walls and a roof—would be any less difficult to remove than the parking lot at issue here.

> building, and not simply stop the operation as a theater, then having voluntarily consented to, or put themselves in this position, they cannot be heard to claim the removal of their property . . . .

*Id.* at 14. We note that the mechanics discussed in the passage did not hold mechanic's liens. *Id.* We feel compelled to extend at least the same protection to those who have sought the extra security of a mechanic's lien.

[35] However one chooses to classify a parking lot, there can be little doubt that a parking lot may enhance the value of the land upon which it sits. The parking lot's removal, while difficult, is not impossible, and in this case Rieth-Riley believes that it can be done. Therefore, to the extent that removal of the parking lot is practical—meaning that its removal will not substantially impair the value of the land beyond that which it would have been had the parking lot never been paved—we believe it falls within the category of things that Indiana Code section 32-28-3-2 allows to be removed to satisfy a mechanic's lien.

[36] In sum, Wells Fargo is entitled to use the full amount of its judgment as a credit towards any bid for the purchase of Lot 1, and the judgment of the trial court requiring Wells Fargo to deposit a certain amount of that bid in cash is reversed. The cause is remanded for further proceedings consistent with this opinion. On remand, the trial court is to determine whether removal of the parking lot is practical and, if so, allow Rieth-Riley to exercise that option in accordance with Indiana Code section 32-28-3-2. Otherwise, Rieth-Riley's mechanic's lien is junior to Wells Fargo's mortgage lien and Rieth-Riley is

entitled to proceeds from the sale of Lot 1 only after Wells Fargo's mortgage has been satisfied.

[37] The judgment of the trial court is reversed and remanded with instructions.

Najam, J., and Friedlander, J., concur.